**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
Knoxville Division**

| | |
|---|---|
| **PLATE LLC,** | |
| Plaintiff, | **Case No. 3:18-CV-265** |
| v. | **PATENT CASE** |
| **ELITE TACTICAL SYSTEMS, LLC,** | **JURY TRIAL DEMANDED** |
| **JIM HANSEN, and GEORGE LOVEDAY IV** | |
| Defendants. | |

## COMPLAINT

Plaintiff Plate, LLC, a Florida limited liability company ("Plate") by and through

undersigned counsel, for its Complaint alleges as follows:

### NATURE OF THE ACTION

1.      Founded in 2014, Plate is reinventing the way military, law enforcement,

and civilians operate firearms. One of Plate's flagship products lines are its popular

ACEM® magazine loading devices. Among the ACEM's many innovations, the most

significant is the ability to successively load center feed pistol magazines, a challenge

previously unmet for over a century.  Christopher Plate ("Chris") is the founder and

president of Plate, as well as the named inventor on all patents subject to this action.

2.      Elite Tactical Systems, LLC ("ETS") is a gun apparel and accessory

company, which specializes in producing and selling ammunition magazines for Glock

handguns and AR-15 rifles.  Until December of 2016, ETS had not advertised magazine

ammunition loaders.  Until June of 2017, ETS had not offered magazine ammunition

loaders for sale. ETS has a history of abusing other parties' intellectual property rights and directly infringing patents belonging to other parties.

3.      ETS first learned of Plate on or about June 3, 2016. Chris, on behalf of Plate, initially contacted ETS via ETS' Facebook website to reach the appropriate ETS officer to discuss ETS' potential interest in Plate's magazine loading devices. After receiving Chris' phone number, Jim Hansen promptly called Chris on behalf of ETS to express interest in the magazine loading devices Chris had been developing.

## PARTIES

4.      Plate is a Florida limited liability company with its principal place of business at 4235 SE 20th, Unit B402, Place Cape Coral, FL 33904.

5.      Defendant ETS is a Wyoming limited liability company. On information and belief its principal place of business is at 9238 Linksvue Drive, Knoxville, TN 37922. On information and belief, ETS' registered agent for service of process is Corporate Agents, LLC, 1712 Pioneer Ave Suite 100 Cheyenne, WY 82001.

6.      Defendant Jim Hansen ("Mr. Hansen") is an individual domiciled in Knoxville, TN. On information and belief, Mr. Hansen is an officer for ETS and member of ETS.

7.      Defendant George Edward Loveday, IV ("Mr. Loveday") is an individual domiciled in Knoxville, TN. On information and belief, Mr. Loveday is an officer for ETS and member of ETS.

8.      ETS, Mr. Hansen, and Mr. Loveday are collectively referred to herein as the "Defendants."

2

## JURISDICTION AND VENUE

9.     This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338(a), subject matter jurisdiction over Plate's unfair competition claim under 28 U.S.C. § 1338(b), and subject matter jurisdiction over Plate's federal trade secret claim under 28 U.S.C. § 1331.

10.     This Court has jurisdiction over Plate's state law claims under 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over Defendants because upon information and belief, ETS' principle place of business is located in Tennessee, and Mr. Hansen and Mr. Loveday are domiciled in Tennessee.

12.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1), and 1400(a) because the Defendants reside and are located in the Eastern District of Tennessee.

## THE ASSERTED PATENTS

13.     On April 11, 2017, the United States Patent and Trade Office ("USPTO") duly and legally issued U.S. Patent No. 9,618,286 ("the '286 Patent"), entitled "Ammunition magazine loader," to Chris.  A true and correct copy of the '286 Patent is attached as "Exhibit A."  Plate is the owner by assignment (the "Assignment") of the '286 patent and holds all rights and interest in that patent. A true and correct copy of the Assignment is attached as "Exhibit B."

3

14.     On June 27, 2017, the USPTO duly and legally issued U.S. Patent No. 9,689,633 ("the '633 Patent"), entitled "Magazine loader," to Chris.  A true and correct copy of the '633 patent is attached as "Exhibit C."  Plate is the owner by the Assignment of the '633 patent and holds all rights and interest in that patent.  A true and correct copy of the Assignment is attached as "Exhibit B."

15.     On August 22, 2017, the USPTO duly and legally issued U.S. Patent No. 9,739,552 ("the '552 Patent"), entitled "Magazine loader," to Chris.  A true and correct copy of the '552 Patent is attached as "Exhibit D."  Plate is the owner by the Assignment of the '552 Patent and holds all rights and interest in that patent.  A true and correct copy of the Assignment is attached as "Exhibit B."

16.     On October 24, 2017, the USPTO duly and legally issued U.S. Patent No. 9,797,669 ("the '669 Patent"), entitled "Magazine loader," to Chris.  A true and correct copy of the '669 Patent is attached as "Exhibit E."  Plate is the owner by the Assignment of the '982 Patent and holds all rights and interest in that patent.  A true and correct copy of the Assignment is attached as "Exhibit B."

17.     On April 3, 2018, the USPTO duly and legally issued U.S. Patent No. 9,933,220 ("the '220 Patent"), entitled "Magazine loader," to Chris. A true and correct copy of the '220 Patent is attached as "Exhibit F."  Plate is the owner of the '220 Patent by the Assignment of United States Patent Application 15/713,395.  United States Patent Application 15/713,295 was issued as the '220 Patent.  As such, Plate holds all rights and interest in the '220 Patent.  A true and correct copy of the Assignment is attached as "Exhibit B."

4

18.     The '286 Patent, '633 Patent, '552 Patent, '669 Patent, and the '220 Patent are collectively referred to herein as the "Asserted Patents."

19.     The Asserted Patents are continuations-in-part; the Asserted Patents contain both method and device claims.  The '286 Patent and the '633 Patent contain device claims.  The '552 Patent and the '669 Patent contain method claims.  The '220 Patent contains device and method claims.

## FACTUAL BACKGROUND

20.     Plate has taken great efforts to protect its confidential and proprietary information concerning the designs and mechanics of its pistol magazine ammunition loading devices (the "Magazine Loader/s").  Plate does not share confidential and proprietary information regarding the Magazine Loaders with individuals and entities outside of Plate without executing non-disclosure agreements.  Plate properly labels all confidential information as such.  Plate takes these efforts because the confidential and proprietary information concerning the Magazine Loaders has independent economic value.

21.     On or about June 3, 2016, Mr. Hansen called Chris on behalf of ETS to express interest in the Magazine Loaders Chris had been developing.

22.     On or about June 10, 2016, Chris, on behalf of Plate, sent a non-disclosure and non-compete agreement (the "Plate NDA") to Mr. Hansen at ETS. A true and correct copy of the Plate NDA is attached as "Exhibit G."

23.     On or about July 9, 2016, Chris, on behalf of Plate, sent a follow up email to Mr. Hansen at ETS inquiring whether ETS was still interested in seeing the Magazine Loaders because ETS had yet to return the executed Plate NDA. Plate would not provide information about the Magazine Loaders until ETS executed the Plate NDA.

24.     On or about July 29, 2016, Mr. Hansen, in his representative capacity for ETS, executed the Plate NDA with Chris, in Chris' representative capacity for Plate. The Plate NDA indicates the purpose is to share confidential information so that ETS may evaluate the Magazine Loaders. The Plate NDA also states that ETS may provide Chris with feedback and information on the Magazine Loaders.

25.     Also on or about July 29, 2016, in reliance on the executed Plate NDA, Plate provides ETS with confidential information regarding the Magazine Loaders for the first time. The confidential information was emailed to ETS by Plate and specifically included drawings and designs of the Magazine Loaders, as well as, digital videos of the Magazine Loaders functioning.

26.     On or about August 4, 2016, Mr. Hansen, on behalf of ETS, confirms to Chris that ETS has received the confidential information regarding the Magazine Loaders. Mr. Hansen indicates the Magazine Loaders are "pretty impressive."

27.     On or about August 8, 2016, Plate sends ETS a copy of the patent application filed with the USPTO on December 22, 2015 (application number 14979051), along with the relevant drawings and the Information Disclosure Statement.

28.     On or about August 16, 2016, Mr. Hansen and Mr. Loveday of ETS call Chris to discuss the patent application sent on August 8, 2016, to discuss potential prior art and to offer Plate $50,000.00 for the Magazine Loader intellectual property.

29.     On or about August 22, 2016, ETS requests that Plate send a prototype Magazine Loader for pistols.

30.     On or about August 23, 2016, Plate sends ETS a prototype Magazine Loader for pistols.

31.     On or about August 24, 2016, ETS receives Plate's prototype Magazine Loader for pistols.

32.     On or about August 31, 2016, Mr. Hansen and Mr. Loveday of ETS call Chris to discuss the prototype Magazine Loader for pistols sent by Plate on August 23, 2016.  On behalf of Plate, Chris explains to ETS that he cannot accept the $50,000.00 offer without consulting with Plate's investors.

33.     On or about September 9, 2016, Plate informs ETS it is rejecting ETS' $50,000.00 offer, but that Plate is still interested in collaborating with ETS.

34.     On or about September 9, 2016, Mr. Loveday emails Plate, on behalf of ETS.  Mr. Loveday states that he is interested in working with Plate.  Mr. Loveday requests that Plate explain what differentiates the then pending Plate patents from the Published Patent Application Numbers 2003/0046854 ("Urcheck") and 2014/0033592 ("Fiorucci").

35.     On or about September 17, 2016, Plate provides Mr. Loveday of ETS an in depth description of what differentiates then pending Plate patents from Urcheck and Fiorucci.

36.     On or about September 26, 2016, Mr. Loveday emails Plate, on behalf of ETS.  Mr. Loveday states that Plate's explanation regarding the Urcheck and Fiorucci prior art is "promising."

37.     On or about October 4, 2016, Mr. Hansen calls Chris, on behalf of ETS. Mr. Hansen informs Plate that he agrees with Plate's analysis regarding the Urcheck and Fiorucci prior art.  Mr. Hansen further informs Plate that ETS made improvements on Plate's loader design and ETS desires to make a deal for Plate's intellectual property. Mr. Hansen requests that Plate execute a mutual non-disclosure agreement (the "ETS Mutual NDA") prior to continuing talks. A true and correct copy of the ETS Mutual NDA is attached as "Exhibit H."

38.     On or about October 5, 2016, ETS sends Plate the ETS Mutual NDA.

39.     Also on or about October 5, 2016, Plate returns the signed ETS Mutual NDA.

40.     On or about October 6, 2016, Mr. Loveday emails Plate, on behalf of ETS to inform Plate that Mr. Loveday is "working on getting some cool preliminary stuff over to you…bare [SIC] with me."

41.     Plate had no further substantive communications with Defendants for the remainder of 2016.  Plate's subsequent attempts to connect with Defendants in October

and December were either ignored entirely or met with generic responses that Mr. Hansen and Mr. Loveday had been busy and would try to connect with Plate soon.

42.     On or about December 13, 2016, Chris called Mr. Hansen at ETS. Mr. Hansen did not answer or otherwise respond.

43.     Upon information and belief, Defendants never intended to purchase Plate's intellectual property regarding the Magazine Loaders and Defendants never intended to collaborate with Plate in the joint development and improvement of the Magazine Loaders.

44.     Upon information and belief, Defendants willfully and intentionally misled Plate into believing Defendants intended to purchase the Magazine Loader intellectual property or to collaborate on their development.

45.     Upon information and belief, Defendants willfully and intentionally misled Plate in regard to Defendants intentions to induce Plate into executing the ETS Mutual NDA.

46.     Plate relied on Defendants' misrepresentations in Plate's decision to execute the ETS Mutual NDA.

47.     On or about December 23, 2016, ETS released a promotional video for an ETS pistol magazine loader, which ultimately would be produced and sold as the C.A.M. Loader for Pistol Mags 9mm/.40 (the "ETS Pistol Loader 9mm").

48.     On or about January 10, 2017, Plate sent a cease and desist letter to ETS and Mr. Hansen demanding that ETS cease violating the Plate NDA by marketing the

ETS Pistol Loader 9mm ("Plate Cease and Desist 1"). Defendants did not respond. A true and correct copy of Plate Cease and Desist 1 is attached as "Exhibit I."

49. On or about January 19, 2017, ETS attended a Las Vegas gun convention known as "Shot Show."

50. Also on or about January 19, 2017, at "Shot Show," Mr. Hansen of ETS was personally served with a copy of Plate Cease and Desist 1.

51. On or about January 27, 2017, ETS responds to Plate Cease and Desist 1 with a letter denying the use of Plate's confidential information and therefore also denying the breach of either the Plate NDA or the ETS Mutual NDA ("ETS Response Letter 1"). Further, ETS Response Letter 1 states that Urcheck and Fiorucci render the Plate pistol Magazine Loader "obvious" and that the ETS Pistol Loader 9mm departs from the Plate pistol Magazine Loader. A true and correct copy of ETS Response Letter 1 is attached as "Exhibit J."

52. On or about June 30, 2017, ETS began selling the ETS Pistol Loader 9mm on the ETS website.

53. On or about August 15, 2017, ETS began selling an ETS rifle magazine loader on the ETS website (the "ETS Rifle Loader"). Plate does not allege that the ETS Rifle Loader infringes on the Asserted Patents. Plate does allege it was created using Plate's confidential information in violation of the Plate NDA and ETS Mutual NDA and in violation of state and federal trade secrets laws.

54. On or about January 23, 2018, ETS begins selling ETS pistol Magazine Loader models for .380 caliber and .45 caliber bullets, in addition to the second

10

generation model for 9mm and .40 caliber. The ETS products names are as follows: C.A.M. Loader for All Pistol Mags .380 caliber ("ETS Pistol Loader .380"); C.A.M. Loader for All Pistol Mags .45 caliber ("ETS Pistol Loader .45"); GEN II - C.A.M. Loader for All Pistol Mags 9mm/.40 caliber ("ETS Pistol Loader Gen II 9mm").

55.　On or about January 23, 2018, Plate sent a second cease and desist letter to Defendants ("Plate Cease and Desist 2"). Plate Cease and Desist 2, informed Defendants of the four patents held by Plate at the time, specifically the '286 Patent, the '633 Patent, the '552 Patent, and the '669 Patent. Plate Cease and Desist 2 also informed Defendants of the ETS products that were infringing Plate's patents, specifically ETS Pistol Loader 9mm, ETS Pistol Loader Gen II 9mm, ETS Pistol Loader .380, and ETS Pistol Loader .45. Finally, Plate Cease and Desist 2 included copies of the then four issued patents, including the patent's claims and drawing sheets. A true and correct copy of Plate Cease and Desist 2 is attached as "Exhibit K."

56.　On or about February 8, 2018, ETS responds to Plate Cease and Desist 2. ETS denies its products infringe on Plate's patents ("ETS Response Letter 2"). A true and correct copy of Plate Cease and Desist 2 is attached as "Exhibit L."

57.　On or about April 6, 2018, Plate sent a third cease and desist letter to Defendants ("Plate Cease and Desist 3"). Plate Cease and Desist 3, informed Defendants that the '220 Patent was issued. Plate Cease and Desist 3 reaffirmed Plate's demand that Defendants stop infringing the Asserted Patents as originally demanded in Plate Cease and Desist 2. Finally, Plate Cease and Desist 3 included copies of all the Asserted

Patents, including the Asserted Patent's claims and drawing sheets. A true and correct copy of Plate Cease and Desist 3 is attached as "Exhibit M."

58.     The ETS Pistol Loader 9mm, ETS Pistol Loader Gen II 9mm, ETS Pistol Loader .380, and ETS Pistol Loader .45 are collectively referred to herein as the "Infringing ETS Products." The Infringing ETS Products consist of the same core elements, which equally infringe on the Asserted Patents. The minor differences among each of the Infringing ETS Products primarily consist of those needed for the different caliber sizes, as well as other superficial variations.

59.     The Infringing ETS Products and the ETS Rifle Loader are collectively referred to herein as the "Accused ETS Products."

60.     Upon information and belief, ETS has produced and sold approximately 40,000-50,000 units of the Accused Products since June 2017.

61.     Upon information and belief, ETS continues to heavily market and sell the Accused Products through interstate commerce across the United States, including no less than 40 locations within the State of Tennessee.

62.     Despite Plate's initial excitement and willingness to collaborate with Defendants on the Magazine Loaders, and Plate's subsequent attempts to reach an amicable resolution via numerous requests to Defendants that ETS stop infringing the Asserted Patents and stop breaching the Plate NDA and the ETS Mutual NDA, ETS has continued to infringe the Asserted Patents and misuse Plate's confidential information willfully and wantonly. Plate brings this action to recover the just compensation it is owed for Defendants' past infringement, and to prevent Defendants from continuing to

12

benefit from the Asserted Patents in the future without authorization or compensation to Plate.

## COUNT I – INFRINGEMENT OF THE '286 PATENT

63.    Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

64.    Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, claim 1 and claims 5-21 of the '286 Patent in violation of 35 U.S.C. §271(a) by making, using, marketing, offering to sell, and selling, directly and through intermediaries, in this District and elsewhere in the United States, the Infringing ETS Products.

65.    For example, the Infringing ETS Products infringe claim 1 of the '286 Patent, which provides as follows:

> 1. An ammunition magazine loader configured to load at least one ammunition round into a magazine having, a follower, a spring providing a spring force biasing the follower upwardly, and a magazine shape, with each round respectively including first and second case ends and a pivot point, said ammunition magazine loader comprising:
>
> a main body having a first main body end, a second main body end, a main body length, and an upper surface;
>
> a rounds recess, extending into said main body from the upper surface and along the main body length, and having first and second rounds recess ends, a rounds recess bottom, first and second rounds recess sides, and first and second rounds recess ledges, with the rounds recess bottom, first rounds recess side, and first rounds recess ledge defining a first case cavity between the rounds recess bottom and the first rounds recess ledge, with the rounds recess bottom, second rounds recess side, and second rounds recess ledge defining a second case cavity between the rounds recess bottom and the second rounds recess ledge, and said rounds recess being shaped to hold the

13

at least one round therein with each first case end positioned within the first case cavity and under the first rounds recess ledge and with each second case end positioned within the second case cavity and under the second rounds recess ledge;

a rounds abutment, connected to the loader, and at least partially positioned within said rounds recess and at the first rounds recess end;

a magazine recess, extending into said main body from the upper surface, and positioned at the first main body end, said magazine recess being complementarily shaped to the magazine shape to retain the magazine in a fixed position within said magazine recess;

wherein the second rounds recess end is, positioned at the second main body end, and shaped to accept each of the at least one round into said rounds recess, and the first rounds recess end opens into said magazine recess, such that with the magazine positioned within said magazine recess and as the at least one round is slidably moved out of said rounds recess through the first rounds recess end, the pivot point of the one or more rounds contacts said rounds abutment to angle the second case end of each respective round towards said magazine recess, and when an exiting round exits said rounds recess, the exiting round abuts and forces at least one of the follower and a pre-loaded round in the magazine downwardly into the magazine against the spring force as the exiting round enters the magazine.

66.     The Infringing ETS Products are ammunition magazine loaders that load at least one ammunition round into a pistol magazine. The Infringing ETS Products operate with pistol magazines that have a follower, a spring biasing the follower upwardly, and a magazine shape. The Infringing ETS Products interact with each round based on the round's first case end, second case end, and pivot point.

67.     The Infringing ETS Products main body includes a first main body end, a second main body end, a main body length, and an upper surface.

68.     The Infringing ETS Products include a rounds recess that extends into the main body from upper surface and along main body length. The Infringing ETS Products

have first and second rounds recess ends. The Infringing ETS Products have a rounds recess bottom, first and second rounds recess sides, first and second rounds recess ledges, and first and second cavities. Specifically note that The Infringing ETS Products ledges meet and are formed into each other. The Infringing ETS Products rounds recess is shaped to hold rounds exactly in the same claimed positions.

69.     The Infringing ETS Products include a rounds abutment positioned within the rounds recess.

70.     The Infringing ETS Products include a magazine recess that extends into main body from upper surface. The Infringing ETS Products magazine recess is complementarily shaped to hold a magazine in a fixed position.

71.     The Infringing ETS Products second rounds recess end is positioned at second main body end, and it is clearly shaped to accept each of the at least one round into its rounds recess. The Infringing ETS Products first rounds recess end opens into its magazine recess.

72.     The Infringing ETS Products in operation manipulate the rounds exactly as claimed; in particular, pivot point contacts rounds abutment to angle second case end of each respective round towards magazine recess, such that when an exiting round exits the rounds recess, the exiting round abuts and forces the follower or a pre-loaded round in magazine downwardly into the magazine against the spring force as the exiting round enters the magazine.

73.    By way of the Plate Cease and Desist 2 letter, Plate has properly provided written notice to Defendants of the '286 Patent Plate holds and how the ETS Infringing Products infringe the '286 Patent.

## COUNT II – INFRINGEMENT OF THE '633 PATENT

74.    Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

75.    Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, claims 1, 22, and 23 of the '633 Patent in violation of 35 U.S.C. §271(a) by making, using, marketing, offering to sell, and selling, directly and through intermediaries, in this District and elsewhere in the United States, the Infringing ETS Products.

76.    For example, the Infringing ETS Products infringe claim 1 of the '633 Patent, which provides as follows:

1. An ammunition magazine loader configured to load a plurality of ammunition rounds into a magazine having, a follower, a spring providing a spring force biasing the follower upwardly, and a magazine shape, with each round respectively including first and second round ends and a pivot point, said ammunition magazine loader comprising:

a main body having first and second main body ends, a main body length, and an upper surface;

a rounds recess, extending into said main body from the upper surface and along the main body length, and having first and second rounds recess ends, a rounds recess bottom, first and second rounds recess sides, and first and second rounds recess ledges, with the rounds recess bottom, first rounds recess side, and first rounds recess ledge defining a first rounds cavity between the rounds recess bottom and the first rounds recess ledge, with the rounds recess bottom, second rounds recess side, and second rounds recess

ledge defining a second rounds cavity between the rounds recess bottom and the second rounds recess ledge, and with said rounds recess being shaped to hold the plurality of rounds therein with each respective first rounds end positioned within the first rounds cavity and under the first rounds recess ledge and with each second rounds end positioned within the second rounds cavity and under the second rounds recess ledge;

and a magazine recess, extending into said main body from the upper surface, and positioned at the first main body end, said magazine recess being complementarily shaped to the magazine shape to retain the magazine in a fixed position within said magazine recess;

wherein the first rounds recess end opens into said magazine recess, the second rounds recess side terminates at a first downwardly angled portion that opens into said magazine recess, and the first rounds recess side includes a second downwardly angled portion, such that with the magazine positioned within said magazine recess and as the plurality of rounds are moved towards the magazine, the pivot point of each of the plurality of rounds successively contacts the second downwardly angled portion to pivot the second rounds end of each successive round towards the magazine, the second rounds end of each successive round passes over the first downwardly angled portion, and when an exiting round exits said rounds recess, the exiting round abuts and forces at least one of the follower and a pre-loaded round in the magazine downwardly into the magazine against the spring force as the exiting round enters the magazine.

77. The Infringing ETS Products are ammunition magazine loaders that load at least one ammunition round into a pistol magazine. The Infringing ETS Products operate with pistol magazines that have a follower, a spring biasing the follower upwardly, and a magazine shape. The Infringing ETS Products interact with each round based on the round's first case end, second case end, and pivot point.

78. The Infringing ETS Products main body includes a first main body end, a second main body end, a main body length, and an upper surface.

79. The Infringing ETS Products include a rounds recess that extends into the main body from upper surface and along main body length. The Infringing ETS Products

17

have first and second rounds recess ends. The Infringing ETS Products have a rounds recess bottom, first and second rounds recess sides, first and second rounds recess ledges, and first and second cavities. Specifically note that The Infringing ETS Products ledges meet and are formed into each other. The Infringing ETS Products rounds recess is shaped to hold rounds exactly in the same claimed positions.

80.     The Infringing ETS Products include a magazine recess that extends into main body from upper surface. The Infringing ETS Products magazine recess is complementarily shaped to hold a magazine in a fixed position.

81.     The Infringing ETS Products first rounds recess end opens into magazine recess. The Infringing ETS Products second rounds recess side terminates at a first downwardly angled portion that opens in the said magazine recess. The Infringing ETS Products first rounds recess side includes a second downwardly angled portion. With magazine positioned within magazine recess and as the plurality of rounds are moved towards the magazine, the pivot point of each round successively contacts the second downwardly angled portion to pivot the second rounds end of each successive round towards the magazine, the second rounds end of each successive round passes over the first downwardly angled portion, and when an exiting round exits rounds recess, the exiting round abuts and forces at least one of the follower and a pre-loaded round in the magazine downwardly into the magazine against the spring force as the exiting round enters the magazine.

82.     By way of the Plate Cease and Desist 2 letter, Plate has properly provided written notice to Defendants of the '633 Patent Plate holds and how the ETS Infringing Products infringe the '633 Patent.

## COUNT III – INFRINGEMENT OF THE '552 PATENT

83.     Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

84.     Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, claims 1-6 of the '552 Patent in violation of 35 U.S.C. §271(a) by making, using, marketing, offering to sell, and selling, directly and through intermediaries, in this District and elsewhere in the United States, the Infringing ETS Products.

85.     For example, the Infringing ETS Products infringe claim 1 of the '552 Patent, which provides as follows:

> 1. A method of using an ammunition magazine loader to load a plurality of ammunition rounds into an ammunition magazine having a follower, a spring providing a spring force biasing the follower upwardly, and a magazine shape, with each round respectively including first and second case ends and a pivot point, and with the magazine loader comprising a main body having a first main body end, a second main body end, and a main body length, a rounds recess, extending along the main body length, and having first and second rounds recess ends, a rounds recess bottom, first and second rounds recess sides, and first and second rounds recess ledges, with the rounds recess bottom, first rounds recess side, and first rounds recess ledge defining a first rounds cavity between the rounds recess bottom and the first rounds recess ledge, with the rounds recess bottom, second rounds recess side, and second rounds recess ledge defining a second rounds cavity between the rounds recess bottom and the second rounds recess ledge, the rounds recess being shaped to hold the rounds therein with each first case end positioned within the first rounds cavity and under the first rounds

19

recess ledge and with each second case end positioned within the second rounds cavity and under the second rounds recess ledge, the second rounds recess end being positioned at the second main body end, and at least a portion of the rounds recess being shaped to accept each round into the rounds recess, a rounds abutment, connected to the loader, and at least partially positioned within the rounds recess and at the first rounds recess end, a magazine recess, in communication with the rounds recess, and positioned at the first main body end, the magazine recess being complementarily shaped to the magazine shape to retain the magazine in a fixed position within the magazine recess and the first rounds recess end opens into the magazine recess, said method comprising:

a. positioning the magazine within the magazine recess;

b. introducing the rounds into the rounds recess; and

c. with a structure, pushing the rounds, via a last round, towards and into the magazine, such that as the rounds are slidably moved out of the rounds recess through the second rounds recess end, the pivot point of each round contacts the rounds abutment to angle each second case end towards the magazine recess, and when an exiting round exits the rounds recess, the exiting round abuts and forces at least one of the follower and a pre-loaded round in the magazine downwardly into the magazine against the spring force as the exiting round enters the magazine.

86.    The Infringing ETS Products are ammunition magazine loaders that load a plurality of ammunition rounds into an ammunition magazine having a follower, a spring biasing the follower upwardly, and a magazine shape.

87.    The Infringing ETS Products main body includes a first main body end, a second main body end, a main body length, and an upper surface.

88.    The Infringing ETS Products include a rounds recess that extends along main body length. The Infringing ETS Products have first and second rounds recess ends. The Infringing ETS Products have a rounds recess bottom, first and second rounds recess sides, first and second rounds recess ledges, and first and second cavities. Specifically

note that The Infringing ETS Products ledges meet and are formed into each other. The Infringing ETS Products rounds recess is shaped to hold rounds exactly in the same claimed positions. The Infringing ETS Products second rounds recess end is positioned at second main body end. The Infringing ETS Products second rounds recess end is shaped to accept each round into rounds recess.

89.     The Infringing ETS Products include a rounds abutment that is connected to the loader and is at least partially positioned within rounds recess and at first rounds recess end.

90.     The Infringing ETS Products include a magazine recess in communication with the rounds recess and positioned at first main body end. The Infringing ETS Products magazine recess is complementarily shaped to magazine shape to retain magazine in fixed position within magazine recess. The Infringing ETS Products first rounds recess end opens into their magazine recess.

91.     Use directions for the Infringing ETS Products instruct users to seat magazine all the way into the loader.

92.     When the Infringing ETS Products plunger is compressed towards magazine, a plurality of rounds are introduced into the rounds recess.

93.     The Infringing ETS Products plunger pushes the rounds, via a last round, towards and into magazine. With the Infringing ETS Products, as rounds are slidably moved out of rounds recess through first rounds recess end, the pivot point of each round contacts rounds abutment to angle each second case end towards magazine recess, and

when an exiting round exits rounds recess, the exiting round abuts and forces the follower

or a pre-loaded round downwardly into magazine against spring force.

94.    By way of the Plate Cease and Desist 2 letter, Plate has properly provided

written notice to Defendants of the '552 Patent Plate holds and how the ETS Infringing

Products infringe the '552 Patent.

## COUNT IV – INFRINGEMENT OF THE '669 PATENT

95.    Plate incorporates and realleges all preceding paragraphs as if set forth fully

hereinafter.

96.    Defendants have directly infringed and continue to directly infringe,

literally or under the doctrine of equivalents, claims 1, 22, and 23 of the '669 Patent in

violation of 35 U.S.C. §271(a) by making, using, marketing, offering to sell, and selling,

directly and through intermediaries, in this District and elsewhere in the United States,

the Infringing ETS Products.

97.    For example, the Infringing ETS Products infringe claim 1 of the '669

Patent, which provides as follows:

> 1. A method of using an ammunition magazine loader to load a plurality of
> ammunition rounds into an ammunition magazine having a follower, a
> spring providing a spring force biasing the follower upwardly, and a
> magazine shape, with each round respectively including first and second
> rounds ends and a pivot point, and with the magazine loader comprising a
> main body having a first main body end, a second main body end, and a
> main body length, a rounds recess, extending along the main body length,
> and having first and second rounds recess ends, a rounds recess bottom,
> first and second rounds recess sides, and first and second rounds recess
> ledges, with the rounds recess bottom, first rounds recess side, and first
> rounds recess ledge defining a first rounds cavity between the rounds recess
> bottom and the first rounds recess ledge, with the rounds recess bottom,

second rounds recess side, and second rounds recess ledge defining a second rounds recess cavity between the rounds recess bottom and the second rounds recess ledge, and with the rounds recess being shaped to hold the plurality of rounds therein with each respective first rounds end positioned within the first rounds cavity and under the first rounds recess ledge and with each second rounds end positioned within the second rounds cavity and under the second rounds recess ledge, at least a portion of the rounds recess being shaped to accept each round into the rounds recess, the second rounds recess side terminating at a first downwardly angled portion, and the first rounds recess side including a second downwardly angled portion, and a magazine recess in communication with the rounds recess and positioned at the first main body end, the magazine recess being complementarily shaped to the magazine shape to retain the magazine in a fixed position within the magazine recess, said method comprising:

a. positioning the magazine within the magazine recess;

b. introducing the rounds into the rounds recess; and

c. with a structure, pushing the rounds, via a last round, towards and into the magazine, such that as the plurality of rounds are moved towards the magazine, the pivot point of each round successively contacts the second downwardly angled portion to pivot the second rounds end of each successive round towards the magazine, the second rounds end of each successive round passes over the first downwardly angled portion, and when an exiting round exits the rounds recess, the exiting round abuts and forces at least one of the follower and a pre-loaded round in the magazine downwardly into the magazine against the spring force as the exiting round enters the magazine.

98.     The Infringing ETS Products are ammunition magazine loaders that load a plurality of ammunition rounds into an ammunition magazine having a follower, a spring biasing the follower upwardly, and a magazine shape. The Infringing ETS Products interact with each round based on the round's first case end, second case end, and pivot point.

99.     The Infringing ETS Products main body includes a first main body end, a second main body end, and a main body length.

100. The Infringing ETS Products include a rounds recess that extends along main body length. The Infringing ETS Products have first and second rounds recess ends. The Infringing ETS Products have a rounds recess bottom, first and second rounds recess sides, first and second rounds recess ledges, and first and second cavities. Specifically note that The Infringing ETS Products ledges meet and are formed into each other. The Infringing ETS Products first and second cavities are defined with the same structure as claimed. As per the immediately preceding note, The Infringing ETS Products ledges meet and are formed into each other in a continuous manner. The Infringing ETS Products rounds recess is shaped to hold rounds exactly in the same claimed positions. The Infringing ETS Products second rounds recess end is shaped to accept each round into rounds recess. The Infringing ETS Products second rounds recess side terminates at a first downwardly angled portion that opens in the said magazine recess. The Infringing ETS Products first rounds recess side includes a second downwardly angled portion.

101. The Infringing ETS Products include a magazine recess in communication with the rounds recess and positioned at first main body end. The Infringing ETS Products magazine recess is complementarily shaped to magazine shape to retain magazine in fixed position within magazine recess.

102. Use directions for the Infringing ETS Products instruct users to seat magazine all the way into the loader.

103. When the Infringing ETS Products plunger is compressed towards magazine, a plurality of rounds are introduced into the rounds recess.

104.    The Infringing ETS Products plunger pushes the rounds, via a last round, towards the magazine, the pivot point of each round successively contacts the second downwardly angled portion to pivot the second rounds end of each successive round towards the magazine, the second rounds end of each successive round passes over the first downwardly angled portion, and when an exiting round exits rounds recess, the exiting round abuts and forces the follower or a pre-loaded round downwardly into magazine against spring force.

105.    By way of the Plate Cease and Desist 2 letter, Plate has properly provided written notice to Defendants of the '669 Patent Plate holds and how the ETS Infringing Products infringe the '669 Patent.

## COUNT V – INFRINGEMENT OF THE '220 PATENT

106.    Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

107.    Defendants have directly infringed and continue to directly infringe, literally or under the doctrine of equivalents, claims 1-38 of the '220 Patent in violation of 35 U.S.C. §271(a) by making, using, marketing, offering to sell, and selling, directly and through intermediaries, in this District and elsewhere in the United States, the Infringing ETS Products.

108.    For example, the Infringing ETS Products infringe claim 1 of the '220 Patent, which provides as follows:

> 1. A method of using an ammunition magazine loader to load a plurality of ammunition rounds into an ammunition magazine having a follower, a

spring providing a spring force biasing the follower upwardly, and a magazine shape, with each round respectively including a first case end, a second case end opposite the first case end, and a pivot point, and with the magazine loader comprising a main body having first and second main body ends, a magazine cavity, formed within the main body end, and complimentarily shaped to the magazine shape to retain the magazine in a fixed position within the magazine cavity, a rounds cavity, formed within the main body, and having first and second rounds cavity ends, the first rounds cavity end being in communication with the magazine cavity, the rounds cavity being defined in part by first and second rounds cavity slides, at lead one upper rounds cavity abutment, and at least one lower rounds cavity abutment being positioned to abbutingly limit movement of the rounds along a movement place when the rounds exit the rounds cavity, and at least a portion of the rounds cavity being shaped to accept each round into the rounds cavity, and a rounds abutment, at least partially positioned, within the rounds cavity, and at the first rounds cavity end, said method comprising:

a. positioning the magazine within the magazine cavity;

b. introducing the rounds into the rounds cavity; and

c. with a structure, pushing the rounds, via a last round, towards and into the magazine, such that as the rounds are moved towards the magazine, the pivot point of each round successively contacts the rounds abutment to angle the second rounds end of each successive round towards the magazine, and when an existing round exits the rounds cavity, the exiting round abuts and forces at least one of the follower and a pre-loaded round in the magazine into the magazine against the spring force as the existing round enters the magazine.

109.    The Infringing ETS Products are ammunition magazine loaders that load a plurality of ammunition rounds into an ammunition magazine having a follower, a spring biasing the follower upwardly, and a magazine shape. The Infringing ETS Products interact with each round based on the round's first case end, second case end, and pivot point.

110.    The Infringing ETS Products main body includes a first main body end and a second main body end.

111.    The Infringing ETS Products include a magazine cavity positioned at first main body end. The Infringing ETS Products magazine cavity is complementarily shaped to magazine shape to retain magazine in fixed position within magazine cavity.

112.    The Infringing ETS Products include a rounds cavity formed within the main body. The Infringing ETS Products have first and second rounds cavity ends. The Infringing ETS Products include a magazine cavity in communication with the rounds cavity end. The Infringing ETS Products have first and second rounds cavity sides, upper and lower rounds cavity abutments, and first and second cavities. The Infringing ETS Products rounds cavity is shaped to hold rounds exactly in same claimed positions. The Infringing ETS Products have a rounds abutment positioned within said rounds cavity and at the first rounds cavity end.

113.    Use directions for the Infringing ETS Products instruct users to seat magazine all the way into the loader.

114.    When the Infringing ETS Products plunger is compressed towards magazine, a plurality of rounds are introduced into the rounds cavity.

115.    The Infringing ETS Products plunger pushes the rounds, via a last round, towards the magazine, the pivot point of each round successively contacts the rounds abutment to pivot the second rounds end of each successive round towards the magazine, and when an exiting round exits rounds recess, the exiting round abuts and forces the follower or a pre-loaded round downwardly into magazine against spring force.

116.    By way of the Plate Cease and Desist 3 letter, Plate has properly provided written notice to Defendants of the '220 Patent Plate holds and how the ETS Infringing Products infringe the '220 Patent.

## COUNT VI – UNFAIR COMPETITION

117.    Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

118.    Defendants intentionally and maliciously mislead and deceived Plate into executing the Plate NDA and the ETS Mutual NDA as a ploy to induce Plate into sharing its confidential and propriety information concerning Plate's Magazine Loaders with Defendants.

119.    Defendants intentionally deceived and induced Plate into sharing its confidential and proprietary information with Defendants by expressing interest in purchasing or investing in Plate's confidential and proprietary intellectual property for the Magazine Loaders.

120.    The offer made by Defendants to purchase all of Plate's confidential and proprietary information concerning the Magazine Loaders for $50,000.00 was not a good faith offer and does not cure Defendants' subsequent wrongful appropriation and unauthorized use of Plate's confidential and proprietary information concerning the Magazine Loaders.

121.    Prior to Defendants executing the Plate NDA and receiving Plate's confidential and proprietary information concerning the Magazine Loaders, ETS never advertised or sold any products resembling the Magazine Loaders.

122.    Less than six months after executing the Plate NDA and receiving Plate's confidential and proprietary information concerning the Magazine Loaders, ETS advertised the ETS Pistol Loader 9mm for the first time.

123.    Defendants unfairly used Plate's confidential and proprietary information concerning the Magazine Loaders to design, manufacture, market, and sell the ETS Pistol Loader 9mm, as well as the rest of the Accused ETS Products.

124.    To Plates' detriment, Defendants have sold and continue to sell the Accused ETS Products in the State of Tennessee, in this District, and elsewhere in the United States.

125.    Plate has suffered damages due to Defendants' deceptive acts and wrongful behavior in acquiring and repurposing Plate confidential and proprietary information for Defendants' financial gain.

## COUNT VII – MISAPPROPRIATION OF TRADE SECRETS - FEDERAL

126.    Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

127.    Plate took reasonable efforts to secure its confidential and proprietary information concerning the Magazine Loaders by requiring Defendants to execute the Plate NDA prior to sharing the confidential information with Defendants.  Plate took such

reasonable efforts to secure its confidential and proprietary information because Plate considers this information economically valuable and protects it as Trade Secrets (the "Trade Secrets").

128. Plate's Magazine Loaders are comprised of Trade Secrets and are intended for sale in interstate commerce. Defendants have sold the Accused ETS Products in interstate commerce, including in the State of Tennessee.

129. Defendants' use of Plate's Trade Secrets was subject to the limited uses as provided for in the Plate NDA.

130. Under the Plate NDA and the subsequent ETS Mutual NDA, Defendants had a duty to maintain the secrecy of Plate's Trade Secrets. Defendants received no express or implied authorization from Plate to use or appropriate Plate's Trade Secrets beyond the scope of the intended use of the Trade Secrets under the Plate NDA and ETS Mutual NDA.

131. Upon information and belief, Defendants used Plate's Trade Secrets to create, modify, or improve the Accused ETS Products, thereby violating Defendants' duty under the Plate NDA and ETS Mutual NDA and exceeding the scope of Defendants' rights under the Plate NDA and ETS Mutual NDA.

132. Upon information and belief, Defendants misappropriated Plate's Trade Secrets by creating, modifying, or improving the Accused ETS Products and by marketing and selling the Accused ETS Products in interstate commerce.

133. Defendants' misappropriation of Plate's Trade Secrets is willful and malicious, as demonstrated through Defendants' decision to continue misappropriating

Plate's Trade Secrets after receipt of Plate Cease and Desist 1 and as demonstrated by Defendants' complete disregard for the obligations set forth in the Plate NDA.

134. Plate has been damaged by Defendants' misappropriation of Plate's Trade Secrets.

## **COUNT VIII – MISAPPROPRIATION OF TRADE SECRETS - STATE**

135. Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

136. Defendants received access to Plate's Trade Secrets subject to the Plate NDA; therefore, Defendants possessed Plate's Trade Secrets pursuant to a contractual relationship that gave rise to a duty to maintain the secrecy of the Trade Secrets.

137. Defendants' use of Plate's Trade Secrets was subject to the limited uses as provided for in the Plate NDA.

138. Upon information and belief, Defendants used Plate's Trade Secrets to create, modify, or improve the Accused ETS Products, thereby violating Defendants' duty under the Plate NDA and ETS Mutual NDA and exceeding the scope of Defendants' rights under the Plate NDA and ETS Mutual NDA.

139. Defendants' misappropriation of Plate's Trade Secrets is willful and malicious, as demonstrated through Defendants' decision to continue misappropriating Plate's Trade Secrets after receipt of Plate Cease and Desist 1 and as demonstrated by Defendants' complete disregard for the obligations set forth in the Plate NDA.

140.    Defendants have marketed and sold the Accused ETS Products and continue to market and sell the Accused ETS Products in the State of Tennessee.

141.    Plate has been damaged by Defendants' willful and malicious misappropriation of Plate's Trade Secrets.

## COUNT IX – FRAUDULENT INDUCEMENT

142.    Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

143.    Defendants made material false statements to Plate by Defendants expressing the specific desire to acquire Plate's intellectual property regarding the Magazine Loaders or otherwise jointly collaborating in the Magazine Loaders' development.

144.    Defendants knew they had no intention of purchasing Plate's intellectual property regarding the Magazine Loaders or otherwise jointly collaborating in the Magazine Loaders' development.

145.    Defendants willfully and intentionally misrepresented their interest in purchasing Plate's intellectual property regarding the Magazine Loaders or otherwise jointly collaborating in the Magazine Loaders' development for the purpose of inducing Plate to execute the ETS Mutual NDA.

146.    Plate relied on Defendants' representations in Plate's decision to execute the ETS Mutual NDA.

147. Plate was injured by the execution of the ETS Mutual NDA because the ETS Mutual NDA expressly superseded the non-compete, assignment, and attorney fees clauses in the Plate NDA.

## COUNT X – BREACH OF CONTRACT

148. Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

149. Mr. Hansen, on behalf of ETS, and Chris, on behalf of Plate executed into the Plate NDA on July 29, 2016. The Plate NDA is a valid contract.

150. Mr. Loveday, on behalf of ETS, and Chris, on behalf of Plate executed the ETS Mutual NDA on October 5, 2016. The ETS Mutual NDA is a valid contract.

151. Plate first learned that Defendants breached the Plate NDA on or about December 23, 2016, when Defendants released marketing videos of the ETS Pistol Loader 9mm.

152. On or about January 19, 2017, Mr. Hansen was personally served with Plate Cease and Desist 1. Plate Cease and Desist 1 acted as formal notice of Defendants' breach of the Plate NDA.

153. Plate Cease and Desist 1 demanded that Defendants discontinue the development, marketing, and sales of ETS Pistol Loader 9mm, and to further refrain from using Plate's confidential and proprietary information.

154. In ETS Response Letter 1, received by Plate on or about January 27, 2017, ETS denied using Plate's confidential and proprietary information in the development of

33

ETS Pistol Loader 9mm. Defendants have provided no support of their independent creation of ETS Pistol Loader 9mm.

155. Defendants have breached the Plate NDA and the ETS Mutual NDA by asserting rights to the development, marketing, and sale of ETS Pistol Loader 9mm and the other Accused ETS Products.

156. Defendants continued marketing and sale of the Accused ETS Products constitutes a willful and ongoing breach of the Plate NDA and ETS Mutual NDA.

157. Plate has been damaged and will continue to be damaged as a result of Defendants' breach of the Plate NDA and the ETS Mutual NDA, and Defendants' wrongful assertion that Defendants developed the Accused ETS Products without the use of Plate's confidential and proprietary information.

## COUNT XI – UNJUST ENRICHMENT

158. Plate incorporates and realleges all preceding paragraphs as if set forth fully hereinafter.

159. Plate has conferred a benefit on Defendants by providing Defendants access to Plate's Trade Secrets and other confidential and proprietary information concerning the Magazine Loaders.

160. Defendants are retaining and taking the benefit conferred upon Defendants without providing any compensation to Plate for the same.

161. The circumstances are such that it would be inequitable for Defendants to retain the benefit of the use of Plate's Trade Secrets and other confidential and

proprietary information concerning the Magazine Loaders without providing just compensation to Plate.

## PRAYER FOR RELIEF

WHEREFORE Plate prays for relief, as follows:

A.     A judgment that each of Plate's Asserted Patents is valid and enforceable;

B.     A judgment that Defendants have directly and indirectly infringed one or more claims of each of Plate's Asserted Patents;

C.     A judgment that Defendants' Infringing Products directly and indirectly infringe one or more claims of Plates Asserted Patents;

D.     An order and judgment preliminarily and permanently enjoining Defendants and Defendants' officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or concert with them, and their parents, subsidiaries, divisions, successors and assigns from further acts of infringement of Plate's Asserted Patents;

E.     A judgment awarding Plate the assignment of all ETS pending patent applications and all intellectual property related to the Magazine Loaders;

F.     A judgment awarding Plate all damages adequate to compensate for Defendants' infringement of Plate's Asserted Patents, and in no event less than a reasonable royalty for Defendants' acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

G.     A judgment awarding Plate all damages, including treble damages, based on any infringement found to be willful, pursuant to 35 U.S.C. § 284, together with pre-judgment interest;

H.     A judgment awarding Plate all of ETS' profits, pursuant to 35 U.S.C. § 289 together with pre-judgment interest;

I.     Actual damages suffered by Plate as a result of Defendants' unlawful conduct, in an amount to be proven at trial, as well as pre-judgment interest as authorized by law;

J.     A judgment that this is an exceptional case and an award to Plate of its costs and reasonable attorneys' fees incurred in this action as provided for by 35 U.S.C. § 285;

K.     An order and judgment preliminarily and permanently enjoining Defendants and Defendants' officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or concert with them, and their parents, subsidiaries, divisions, successors and assigns from further acts of use or misappropriation of Plate's Trade Secrets;

L.     Rescission of the ETS Mutual NDA;

M.     A judgment that Defendants have breached and continue to be in breach of the Plate NDA;

N.     Such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plate hereby demands trial by jury on all issues raised by the Compliant.

RESPECTFULLY SUBMITTED this 30th day of June, 2018.

By:   s/Van R. Irion
Van R. Irion
TN Bar Number 024519
Law Office of Van R. Irion
800 South Gay Street, Suite 700
Knoxville, TN 37929
***Attorney for Plaintiff***

William M. Fischbach
Arizona Bar Number: 019769
Tiffany & Bosco, P.A.
2525 East Camelback Road, Seventh Floor
Phoenix, AZ 85016
***Attorney for Plaintiff, Pro Hac Vice***