**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**Knoxville Division**

| | |
|---|---|
| **PLATE, LLC and CHRISTOPHER PLATE,** | **Case No. 3:18-CV-265** |
| Plaintiffs, | |
| v. | **PATENT CASE** |
| **ELITE TACTICAL SYSTEMS, LLC,** | **JURY TRIAL DEMANDED** |
| **JIM HANSEN, GEORGE LOVEDAY III, and** | |
| **GEORGE LOVEDAY IV,** | |
| Defendants. | |
| | **Hon. Curtis Collier** |

## MOTION TO COMPEL RESPONSES TO PLAINTIFF'S DISCOVERY AND ORDERS REGARDING WAIVER

Plaintiffs Plate, LLC and Christopher Plate (collectively "Plate"), by and through undersigned counsel, and pursuant to Rule 37(a)(3)(B) and Rule 37 (a)(3)(C) of the Federal Rules of Civil Procedure, hereby move this Court for an order compelling Defendants Elite Tactical Systems, LLC, Jim Hansen, George Loveday III, and George Loveday IV (collectively "Defendants") (1) to produce documents responsive to Request No. 73 of Plate's Second Set of Requests for the Production, (2) to provide written answers responsive to Interrogatory No. 17 of Plate's First Set of Interrogatories, (3) to compel testimony from J. Kenneth Hoffmeister due to waiver of attorney-client privilege and work product, (4) that attorney-client privilege has been waived between J. Kenneth Hoffmeister and Defendants in regard to potential business with Plate and the prosecution of the issued U.S. Patent No. 10,317,154 for the date ranges of July 29, 2016 to January 27, 2017; and (5) that work product privilege has been waived between J. Kenneth Hoffmeister and Defendants in regard to potential business with Plate and the prosecution of the issued U.S. Patent No. 10,317,154 for the date ranges of July 29, 2016 to January 27, 2017.

As set forth in greater detail in the attached Memorandum supporting this Motion, the Court should this grant this Motion and require Defendants to produce the responsive documents and written answers requested by Plate as well as J. Kenneth Hoffmeister submitting to another deposition for the following reasons:

- Defendants waived the attorney-client communications privilege by injecting into this willful infringement patent litigation the advice that patent counsel, Kenneth Hoffmeister, provided to Defendants in August, September, and October 2016 regarding Kenneth Hoffmeister's analysis of prior art in view of Plate's then pending patents;

- Defendants waived the attorney-client communications privilege by voluntarily disclosing patent counsel, Kenneth Hoffmeister's, conclusions regarding the effect certain alleged prior art had on Plate's patents to a third party;

- The facts, arguments, and evidence provided herein demonstrate that Plate has made a *prima facie* showing of Defendants' fraud on the U.S. Patent Office through Defendants' inequitable conduct of intentionally omitting Chris as a joint-inventor of U.S. Patent 10,317,154 issued to George Loveday III and George Loveday IV, and therefore Plate satisfied the requirements to invoke the crime-fraud exception to attorney-client privilege;

- The privilege under the attorney work product doctrine does not apply to the prior art analysis Defendants' patent counsel, Kenneth Hoffmeister, completed and communicated to Defendants in August, September, and October 2016 because at that time Plate had not filed or threatened to file litigation in connection with this matter;

- Should the privilege under the attorney work product doctrine be deemed to apply, it too would be waived in regard to any work product completed by Kenneth Hoffmeister that was

2

addressing the same subject matter at issue in the attorney-client communications for which privilege was lost;

- Concurrent with the service of Plate's Second Set of Requests for the Production of Documents and First Set of Interrogatories on Defendants, Plate provided Defendants with notice and supporting rationale regarding why privilege for certain attorney-client communications had been waived and thus why Plate's discovery requests specifically included requests for otherwise privileged documents and information, by way of letter dated May 31, 2019; and

- Defendants did not respond to Plaintiffs' May 31, 2019 letter, Defendants did not support their privilege objections with any support for why communications or work product privilege applied, and Defendants raised no other relevant objection to providing responsive written answers or documents other than on grounds of privilege. Plaintiffs hereby certify that they have in good faith conferred or attempted to confer with Defendants in failing to make disclosure or discovery in an effort to obtain it without court action.

For these reasons, Plaintiffs respectfully request this Court grant an order as set out at the outset of this Motion.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
Knoxville Division**

| | |
|---|---|
| **PLATE, LLC and CHRISTOPHER PLATE,** | |
| Plaintiffs, | **Case No. 3:18-CV-265** |
| v. | **PATENT CASE** |
| **ELITE TACTICAL SYSTEMS, LLC,** **JIM HANSEN, GEORGE LOVEDAY III, and** **GEORGE LOVEDAY IV,** | **JURY TRIAL DEMANDED** |
| Defendants. | |
| | **Hon. Curtis Collier** |

## <u>MEMORANDUM IN SUPPORT OF MOTION TO COMPEL RESPONSES TO PLAINTIFF'S DISCOVERY AND ORDERS REGARDING WAIVER</u>

### I.     BACKGROUND

#### A.     Relevant Background Facts

On or about July 29, 2016, Plaintiff Christopher Plate ("Chris") and Defendant Jim Hansen ("Mr. Hansen") executed a non-disclosure agreement (the "Plate NDA"). The purpose of the Plate NDA, as stated on the document, was for Plate to share confidential information regarding its then patent pending magazine loader prototype products with Defendant Elite Tactical Systems, LLC ("ETS"), so that ETS may evaluate the same for potential acquisition or joint efforts in production and sale. Shortly thereafter, Chris sent ETS physical prototypes, videos of the prototypes in action, and copies of his then pending patents. On or about September 9, 2016, Defendant George Loveday IV ("Mr. Loveday IV") emailed Chris, inquiring about what differentiated Chris' then pending patents from the Published Patent Application Numbers 2003/0046854 ("Urchek") and 2014/0033592 ("Fiorucci"). On or about September 17, 2016, via email, Chris provided Mr. Loveday IV with in-depth analysis of what distinguished his patents from the aforementioned prior art. Mr. Loveday IV responded that Chris' analysis was "promising."

There are no further documented discussions between Plate and Defendants regarding any prior art, including Urchek or Fiorucci. Plate alleges a phone call was held on or about October 4, 2016 between Chris, Mr. Hansen and Mr. Loveday IV, during which Mr. Loveday IV informed Chris that he agreed with Chris' analysis of the prior art and further stated that ETS wanted to share ideas with Plate to improve the magazine loaders but could not until Plate executed a mutual non-disclosure agreement that would protect ETS as well (the "ETS Mutual NDA") (Doc. 106 at ¶45). Defendants deny all aspects of this conversation except in regard to the ETS Mutual NDA. (Doc. 111 at ¶45).

Almost immediately after Plate executed the ETS Mutual NDA on October 6, 2019, Defendants began avoiding Chris' communications and attempts to further discuss their business plans. Defendants acknowledge that they had no substantive communications with Plate after receiving the executed ETS Mutual NDA. (Doc. 111 at ¶49). Approximately two months later, on or around December 23, 2016, Chris saw a video posted on an ETS social media page demonstrating a magazine loading device. This is the first time ETS advertised such a product.

Plate sent a cease and desist letter on or about January 10, 2017, which Defendants' patent counsel, Ken Hoffmeister ("Mr. Hoffmeister") replied to on January 27, 2017. In the responsive letter, Mr. Hoffmeister denied Defendants misappropriated Plate's confidential information and alleged that "Fiorucci and Urchek appear to anticipate or render obvious the subject matter of the Plate [Patent] Application." A true and correct copy of Mr. Hoffmeister's January 27, 2017 letter is attached hereto as Exhibit 1.

Plate filed this lawsuit on June 26, 2018, asserting claims of fraudulent inducement, breach of contract for the Plate NDA, and patent infringement. (Doc. 1). Prior to Plate filing this lawsuit, Defendants never provided Plate with any specific explanation, orally or in writing, as to why they

believed any prior art, including Urchek and Fiorucci could invalidate Plate's patents asserted in this suit.[1]

**B.      Facts Related to Discovery Requests Subject to this Motion**

Plate filed a Motion for Preliminary Injunction on July 2, 2018 (Doc. 11).    Defendants filed their Response to Motion for Preliminary Injunction (the "MPI Response") on July 20, 2018 (Doc. 18).   Defendants supported the MPI Response in part through the "Declaration of George Loveday IV" (Doc. 18-1).  At Paragraph 34, Mr. Loveday IV testified that

> [o]n or about October 10, 2016, I met with ETS's patent counsel to discuss the prior art references. After further review and consultation with patent counsel, I, remained concerned the Plate design could not obtain meaningful patent protection due to the prior art. I was also concerned any patents that might issue would later be found to be invalid. (Doc. 18-1 at p. 7).

Defendants incorporated Paragraph 34 of Mr. Loveday's declaration into the MPI Response (Doc. 18 at p. 2).  At Paragraph 22, Mr. Loveday IV testified that as of August 16, 2016, Defendants had not yet received Mr. Hoffmeister's analysis of Plate's patent applications or analysis of Plate's prototypes in action.  (Doc. 18-1 at p. 4).  From the information in Paragraph 22 of Mr. Loveday IV's Declaration, one can infer that Defendants sent Plate's patent applications and prototype videos to Mr. Hoffmeister.

On January 28, 2019, Defendants produced a Privilege Log of attorney-client communications.   A true and correct copy of Defendants' Privilege Log is attached hereto as

---

[1] Plate's patents asserted in this suit (hereinafter the "Asserted Patents") refers to those patents referenced in the Fourth Amended Complaint specifically, U.S. Patent No. 9,739,552 ("the '552 Patent"), U.S. Patent No. 9,797,669 ("the '669 Patent"), U.S. Patent No. 9,933,220 ("the '220 Patent"), and U.S. Patent No. 10,151,547 ("the '547 Patent"). Together with the Asserted Patents, Plate's patent family also includes U.S. Patent No. 9,618,286 ("the '286 Patent") and U.S. Patent No. 9,689,633 ("the '286 Patent") (collectively the "Plate Patent Family").

Exhibit 2. Privilege Log Entry No. 10 indicates that Mr. Loveday IV sent Mr. Hoffmeister an email "requesting legal advice about patent issue related to Plate matter, with 3 attachments." *Id.* Privilege Log Entry No. 15 indicates that Mr. Loveday IV and Mr. Hoffmeister exchanged emails regarding "legal advice sought and received about patent issue related to Plate matter." *Id.* Privilege log Entry No. 12 indicates that Mr. Loveday IV emailed Defendants' patent counsel, Mr. Hoffmeister, on September 17, 2019, "requesting legal advice about patent issue related to Plate matter." *Id.* Privilege log Entry No. 1 indicates that also on September 17, 2016, Mr. Loveday IV sent a text message and picture to Mr. Hansen "reflecting legal advice being sought about patent issue related to Plate matter." *Id.* As noted above, September 17, 2016 is the same day Chris emailed Defendants his in-depth analysis explaining what differentiated his then pending patents from prior art Urchek and Fiorucci.

The email exchanges between Mr. Loveday IV and Mr. Hoffmeister on August 10, 2016, August 18, 2016, and September 17, 2016, combined with Mr. Loveday IV's testimony that on October 4, 2016, he received communication and advice from his patent attorney regarding the effect of prior art on the validity of Plate's then pending patents strongly supports the inference that Mr. Hoffmeister analyzed Fiorucci and Urchek and advised Defendants as to their effect on Plate's then pending patents. As noted above, the parties dispute the contents of their October 4 2016, telephone call to the extent that Plate alleges Defendants represented that they agreed with Plate's analysis of Fiorucci and Urchek, and Defendants deny any conversation on this topic occurred. (Doc. 106 at ¶45; Doc. 111 at ¶45). The October 4, 2016 phone call between the parties is also when Defendants requested that Plate execute a new reciprocal non-disclosure agreement (the "ETS Mutual NDA"), which Defendants represented to Plate was necessary to protect them

and allow them to share ideas with Plate to improve Plate's ammunition magazine loader intellectual property. *Id*.

Interestingly, Entry No. 2 of Defendants' Privilege Log shows that Mr. Hoffmeister provided a draft of the ETS Mutual NDA to Mr. Loveday IV on September 29, 2016, two weeks after Mr. Loveday IV appears to have asked Mr. Hoffmeister to consider Plate's analysis of the Fiorucci and Urchek, and days before Defendants asked Plate to execute the ETS Mutual NDA. *See* Exhibit 2. Defendants' Privilege Log also shows, at Entry No. 14, that on October 31, 2016, Mr. Hoffmeister sent Mr. Loveday IV an email with the subject "0011.00090US DRAFT Provisional Patent Application for Review." *Id*. The proximate timing of these events demonstrates that the legal advice provided by Mr. Hoffmeister was significant to Defendants' evaluation of Plate's then pending patents, and that Mr. Hoffmeister's analysis of Plate's confidential material appears to have been incorporated into the draft patent application prepared for ETS.

In the January 27, 2017 response letter to Plate, Mr. Hoffmeister made conclusory and unsupported statements that "Fiorucci and Urchek appear to anticipate or render obvious the subject matter of the Plate [Patent] Application." *See* Exhibit 1. After Plate filed suit, Mr. Loveday IV testified, without detail, how Mr. Hoffmeister's advice supported Mr. Loveday IV's concerns that prior art would prevent Plate from receiving patent protection. (Doc. 18-1 at p. 7). Mr. Loveday's testimony in reliance of counsel's advice was incorporated into the MPI Response. (Doc. 18 at p. 2). Mr. Hoffmeister's letter has been incorporated into Defendants' affirmative defense of invalidity against each Asserted Patent and their counterclaims regarding the same. (Doc. 111 at pp. 20-21; ¶¶ 34, 66, and 126). The details of Mr. Hoffmeister's analysis of Fiorucci

and Urchek in the view of Plate's then pending patents as of September and October of 2016 is materially relevant to this lawsuit.

### C. Facts Demonstrating Defendants' Incorporation of Plate's Intellectual Property into Defendants' Patent Applications and Issued Patent

Between July 29, 2016 and September 17, 2016, Plate provided Defendants with copies of its then pending patent applications, physical prototypes which embodied the invention in the pending patent applications, videos demonstrating the operation of the physical prototypes, and significant analysis regarding the invention itself, as well as analysis of the invention against specific prior art references Urchek and Fiorucci. In turn, Defendants provided this information to Mr. Hoffmeister for analysis and opinion. *See* Exhibit 2 at Entry No. 10, 12, and 15. With the benefit of Plate's intellectual property as supported by Chris' explanations, Mr. Hoffmeister completed a draft provisional patent application for Defendants on October 31, 2016. *Id* at Entry No. 14.

On or about December 22, 2016, Mr. Hoffmeister filed provisional patent application 62/438,451 ("the '451 Provisional Application") entitled "Firearm Magazine Loader" on behalf of Defendants. Mr. Loveday IV and George Loveday III (Mr. Loveday III) are the only listed inventors on the '451 Provisional Application. A true and correct copy of the '451 Provisional Application is attached hereto as Exhibit 3. On or about December 21, 2017, Mr. Hoffmeister filed patent application 15/851,687 ("the '687 Application") entitled "Firearm Magazine Loader," which claims priority to the '451 Provisional Application. Mr. Loveday IV and Mr. Loveday III are the only listed inventors on the '687 Application. A true and correct copy of the '687 Application is attached hereto as Exhibit 4. On or about June 11, 2019, the '687 Application was issued as U.S. Patent No. 10,317,154 ("the ETS '154 Patent"), entitled "Firearm magazine loader."

Mr. Loveday IV and Mr. Loveday III are the only listed inventors on the ETS '154 Patent. A true and correct copy of the ETS '154 Patent is attached hereto as Exhibit 5.

The specific prototype that Plate sent to Defendants was the ASFM GLK/9 XX PROTOTYPE 7.4, which Plate mailed on August 22, 2016. A true and correct copy of the packing slip indicating the enclosure of two ASFM GLK/9 XX PROTOTYPE 7.4 is attached hereto as Exhibit 6. Mr. Loveday IV confirmed retrieving Plate's ASFM GLK/9 XX PROTOTYPE 7.4 from the post office on August 30, 2016 in Paragraph 25 of his Declaration in support of the MPI Response. (Doc. 18-1 at p. 5). As with all of Plate's ammunition magazine loader devices, prototypes including the ASFM GLK/9 XX PROTOTYPE 7.4, and their related patents, it is the internal geometry that makes them novel and allows for the unmatched loading speed.

The ASFM GLK/9 XX PROTOTYPE 7.4 includes this important geometry within its structure via the rounds pivoting angle at the portion of the structure where the magazine is attached to the loader device. The specific angle is **(54)**126° and this same angle is found in the downwardly angled portion A of the '633 Patent, the '669 Patent, the '220 Patent, and the '547 Patent, as well as angle α of the '451 Provisional Application, later embodied in claim 1 of the ETS '154 Patent. Thus, the crucial rounds pivoting angle at the center of Plate's intellectual property was provided to Defendants and its importance was explained to Defendants prior to the filing of the '451 Provisional Application.

## II. PLATE'S DISCOVERY REQUESTS AND DEFENDANTS' OBJECTIONS

As required by E.D. Tenn. L.R. 37.2, the Request for Production and Interrogatory, along with Defendants' responses and objections thereto that are the subject of this Motion are recited verbatim below. True and correct copies of the discovery requests, responses, and objections at issue are attached hereto as Exhibits 7 and 8, respectively.

7

Request for Production No. 73:

All documents, telephone records, and written communications, regardless of form, by and among Defendants and Defendants' patent counsel Ken Hoffmeister, related to or concerning Plate's intellectual property and the alleged prior art U.S. Application No. 2014/0033592 to Fiorucci or U.S. Application No. 2003/0046854 to Urcheck sufficient to support George Loveday IV's statements made in Paragraph 34 of his July 20th 2018 Declaration that

> [o]n or about October 10, 2016, I met with ETS's patent counsel to discuss the prior art references. After further review and consultation with patent counsel, I, remained concerned the Plate design could not obtain meaningful patent protection due to the prior art. I was also concerned any patents that might issue would later be found to be invalid. (*See* Doc. 18-1 at page 7.).

Response:

Objection. The request seeks documents that are or may be subject to the attorney-client communications privilege or the work product protection doctrine and, therefore, are not discoverable. The request for "all" non-privileged documents is also overbroad and unduly burdensome to the extent it seeks duplicate copies of responsive documents and documents that are cumulative of one another. Without waiving the objections, Defendants respond as follows. Defendants have no responsive documents.

Supplemental Response:

On July 18, 2019, counsel for Plaintiff issued the following clarification of this Request: "Request No. 73 sought any documents that provide support for the statements Mr. Loveday IV made to the Court in Paragraph 34 of his July 20, 2018 declaration. Thus, the request is focused on documents supporting what Mr. Loveday IV said, not what he was thinking." Based on this clarification, and without waiving the objections previously stated, Defendants supplement their response as follows. Defendants have no responsive documents other than the documents disclosed by Mr. Plate, Mr. Plate's email message to Mr. Loveday IV dated September 17, 2016 [Plate00 14 71- 72], the copies of the Fiorucci and Urcheck prior art, and a video recording of the SmitShot SmitLoad device, all of which have already been produced.

Defendants' Supplemental Response above makes reference to a July 18, 2019 email sent

from Plaintiffs' counsel. The referenced email is one of many emails exchanged between the

parties, however the Supplemental Response omits reference to Plaintiffs' requests for

Defendants' counsel to expressly and unequivocally state whether responsive documents to RFP

73 were being withheld on grounds of privilege. Defendants' counsel never answered these

requests in the emails exchanged either. Their refusal to do so was among the factors that necessitated Plate to file this Motion. A true and correct copy of the emails exchanged are attached to this Motion as Exhibit 9.

Interrogatory No. 17:

Describe with specificity all factual bases for George Loveday IV's statements made in Paragraph 34 of his July 20th 2018 Declaration regarding Defendants' concerns with Plate's then pending patents, Defendants' concerns regarding the potential later finding of invalidity for Plate's Patents, when Defendants disclosed these concerns to Plate, and identify all documents that you may rely on to support the aforementioned concerns and disclosure to Plate. (See Doc. 18-1 at page 7.).

Response:

Objection. ETS objects to the Interrogatory because it calls for the disclosure of information subject to the attorney-client communication privilege and the work product protection doctrine and, therefore, not discoverable.

Recognizing that the discovery requests recited above expressly requested otherwise privileged information, Plaintiffs sent a letter to Defendants along with the discovery requests that provided Sixth Circuit authority supporting why Defendants waived the privilege and therefore why the otherwise privileged documents and information were discoverable. A true and correct copy of the letter is attached hereto as Exhibit 10.

## III.    DEPOSITION QUESTIONS OF HOFFMEISTER AND DEFENDANTS' OBJECTIONS

The deposition of Kenneth Hoffmeister, patent counsel for Defendants, was taken on December 3, 2019. The deposition was taken in the case captioned *Plate, LLC v. RCTenn, LLC* in the United States District Court for the Middle District of Tennessee Case No. 3:18-CV-00806. The subject matter that was covered in the December 3, 2019 deposition of Kenneth Hoffmeister is identical to the case at bar. It is anticipated that the same objections that were raised in the December 3, 2019 deposition will be made and that absent court intervention, Plaintiffs will not be able to obtain the answers to the questions. Defendants counsel made several objections

pursuant to attorney client privilege and work product doctrine. Pursuant to E.D. Tenn. L.R. 37.2, the objections from Defendants' objections during the deposition of Kenneth Hoffmeister are recited verbatim below. Relevant portions of the deposition transcript of Kenneth Hoffmeister are attached hereto as Exhibit 11.

Attorney-Client Objection: Hoffmeister Depo. at 15:13-16:22

> Q. Okay. Did you review documents at that
> time?
> A. I think a few. Actually -- maybe a few
> but.
> Q. Okay. Do you recall what they were?
> A. I believe just a couple of e-mails.
> Q. E-mails between who?
> A. Let's see. Those would be e-mails
> between Eddie and myself.
> Q. Okay. Regarding the subject matter
> that we're talking about today?
> A. Yes.
> **MR. WINEMILLER: I'm just going to
> advise the client, not the client, Mr. Hoffmeister,
> not to disclose the substance of those e-mails.**
> MR. IRION: Right.
> Q. All right. So did you give an
> infringement and validity opinion to Mr. Loveday
> regarding Mr. Plate's intellectual property?
> MR. BRITTIAN: Object to the form.
> **MR. WINEMILLER: If you can answer this
> without disclosing any advice you gave to the
> inquiry from or advise you gave to Mr. Loveday, you
> may answer the question.**
> A. Can you repeat the question?
> Q. Did you give an infringement analysis
> to Mr. Loveday regarding Mr. Plate's intellectual
> property?
> **MR. WINEMILLER: Same objection.**
> A. Yes.
> Q. Okay. And did you give Mr. Loveday a
> validity opinion or validity opinion regarding Mr.
> Plate's intellectual property?
> **MR. WINEMILLER: Same objection.**
> A. Yes.

Attorney-Client Objection:  Hoffmeister Depo. at 17:21-18:8

Q. There we go. I think one more page.
All right. Now, before we get to that,
you said that you gave Mr. Loveday an opinion
regarding Mr. Plate's intellectual property. What
was that opinion?
**MR. WINEMILLER: Object to form. I'll
advise the client, Mr. Hoffmeister, excuse me, not
to divulge information that discloses a question
asked by the client or his response to that
question.**
MR. IRION: Okay. So is that a
privilege objection, for the record?
**MR. WINEMILLER: It is.**

Attorney-Client Objection:  Hoffmeister Depo. at 19:17-20:4

Q. All right. So is it correct that you
got a letter from your client that was,
essentially, cease and desist letter from Mr. Plate
and you formed an infringement analysis regarding
that letter?
**MR. BRITTIAN: Object to form.**
**MR. WINEMILLER: Instruct you not to
answer questions about your discussions with the
client. He's asking you about this letter, which
is fine. But I don't want you to divulge your
conversations with your client.**
A. Yes, I had looked at these references
in response.

Work Product Objection:  Hoffmeister Depo. at 21:25-22:16

All right. Was there ever any written
record of your infringement opinion other than this
letter?
**MR. WINEMILLER: That's a yes or no
question. You can answer that.**
A. Yes.
Q. What was it? I'm not asking for the
content, just what was the written record?
A. It was a claim chart.
**MR. IRION: That has not been
disclosed, the claim chart. Do you know?**

**MR. BRITTIAN: What do you mean
disclose?
MR. IRION: Has it been disclosed in
this case, the claim chart, he's referring to?
MR. BRITTIAN: Well, that would be work
product.**

Attorney-Client Objection:  Hoffmeister Depo. at 25:22-26:10

Q. Okay. Were you aware of Fiorucci or
Urchek prior to that?
A. Yes.
Q. How?
**MR. WINEMILLER: Again, I will instruct
the witness not to disclose the inquiries directed
to him by his clients.
MR. IRION: So are you saying he can't
answer the question?**
THE WITNESS: I can not answer the
question.
**MR. IRION: So is that a privilege
objection?
MR. WINEMILLER: It is.**

Attorney-Client Objection:  Hoffmeister Depo. at 27:8-28:2

Q.  All right. And do you know why your
client wanted that document prepared?
**MR. WINEMILLER: Objection. That calls
for a disclosure of attorney-client communications.**
MR. IRION: Okay.
Q. Were you aware of Fiorucci and Urchek
when you prepared that document?
A. Yes.
Q. How?
**MR. WINEMILLER: Objection. Same
basis. If you can answer without disclosing
attorney-client communications you may answer the
question.**
A. I can not answer.
Q. When did you first become aware of Mr.
Plate and his intellectual property?
A. Once they -- roughly, August 2016.
Q. And is that because it was brought to
your attention by ETS?
**MR. WINEMILLER: Same objection.**

Attorney-Client Objection:  Hoffmeister Depo. at 30:11-30:16

      Q. And did you discuss inventorship with
your client before you filed this document?
**MR. WINEMILLER: Object to form.**
**You can answer yes or no without**
**further explanation.**
A. Yes.

Attorney-Client Objection:  Hoffmeister Depo. at 31:3-31:23

      Q. Let me try to rephrase it so it's a
little bit more clear. Did you discuss with
anyone from ETS, prior to filing this document, the
materials that Mr. Plate had provided to ETS prior
to filing this document?
**MR. WINEMILLER: Again, yes or no.**
A. Yes.
Q. Okay. Why did you not -- let me ask it
-- strike that.
Did you advice Mr. Loveday, the third
or the fourth, that Mr. Plate might be a
co-inventor on this application?
**MR. WINEMILLER: Objection to form.**
**Calls for disclosure of attorney-client**
**communication and work product as of this date.**
**MR. IRION: Okay. And are you**
**objecting as a privilege?**
**MR. WINEMILLER: Yes.**
**MR. IRION: And you're advising Mr.**
**Hoffmeister to not answer the question?**
**MR. WINEMILLER: Yes, yes.**
MR. IRION: All right.

Attorney-Client Objection:  Hoffmeister Depo. at 34:8-34:16

      Q. What did Mr. Winemiller say to you
regarding this deposition at any of the meetings
prior to today?
**MR. WINEMILLER: And I admonish the**
**client, excuse me, Mr. Hoffmeister, not to disclose**
**communications of an attorney-client nature,**
**whether it's your communications with ETS, or ETS's**
**representations, your discussions with ETS about**
**the matters.**

Attorney-Client Objection:  Hoffmeister Depo. at 40:15-40:18

    Q. Okay. And the e-mail, what was the
e-mail that you looked at?
**MR. WINEMILLER: Yeah, he can identify
the document, but not the substance of the e-mail.**

Attorney-Client Objection:  Hoffmeister Depo. at 41:19-43:5

    Okay. All right. Now, the letter of
January 27, 2017 mentions, and again, looking at
paragraph three, next to the last sentence, if you
read it with me it says: "ETS was still interested
in exploring the opportunity to work with your
client. The parties could not reach mutually
satisfactory financial terms, however, ETS remains
open to the opportunities to work with your
client." Did I read that correctly?
A. Yes.
Q. What was the basis of that last
sentence?
**MR. WINEMILLER: Hang on just a second.
The sentence ETS remains open to the opportunities
to work with your client?
MR. IRION: Yes.
MR. WINEMILLER: I think we need to
object to that, Van, to the event it would require
Mr. Hoffmeister, at the time, was ETS's attorney to
reveal attorney-client communications.
MR. IRION: Okay.
MR. WINEMILLER: If he can answer
without disclosing attorney-client communications,
he can answer the question.
MR. IRION: Well, the question was,
specifically -- well, okay.**
Q. Can you answer the question without
revealing attorney-client communications?
A. No.
**MR. IRION: All right. You understand
that the assertion of that fact by Mr. Hoffmeister
in the letter waives any privileges as to the basis
of that statement.
MR. WINEMILLER: No, I don't understand
that. That's your legal position. And I'm not
here to argue with you today, Mr. Van Irion.**

MR. IRION: Sure.

## IV.    LEGAL ANALYSIS

### A.    Governing Legal Standards

#### i.    General Scope of Discovery

Federal Rules of Civil Procedure 26(b)(1) broadly allows for parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 940 (6th Cir. 2019) (*quoting* Fed. R. Civ. P. 26(b)(1)).    There are two types of privileges that generally protect an attorney's documents from discovery, the attorney-client communications privilege, and the work-product privilege doctrine. *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 892 (M.D. Tenn. 2010). The attorney-client communications privilege is broadly construed and generally "protects from disclosure confidential communications between a lawyer and his client in matters that relate to the [client's] legal interests. *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) (*quoting In re Grand Jury Investigation*, 723 F.2d 447, 451 (6th Cir.1983)) (internal quotations omitted). The work-product privilege doctrine is separate from and narrower than the communications privilege and only "protects any document prepared in anticipation of litigation by or for the attorney." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). The aforementioned privileges, while necessary to the legal system, are not absolute. *In re Lott*, 424 F.3d 446, 450-452 (6th Cir. 2005). In addition to being limited to their scope as defined above, the privileges can be expressly and implicitly waived. *Id* at 452.

#### ii.    Limits of Privilege: Waivers and Exceptions

The nature of the waiver at issue involves reliance on advice of counsel, third-party disclosure, and the crime-fraud exception arising under inequitable conduct; therefore, both

Federal Circuit and Sixth Circuit law governing the waiver of privilege apply, in-part. *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006) ("Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law" such as reliance on advice of counsel); *In re Regents of Univ. of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit").

In the Sixth Circuit, general waiver of attorney-client privilege occurs through the voluntary disclosure of advice of counsel to a third-party, because "the disclosure runs counter to the notion of confidentiality*." In re Grand Jury Proceedings* Oct. 12, 1995, 78 F.3d 251, 254 (6th Cir. 1996). The Sixth Circuit also specifically instructs that "litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case." *Id* at 454. Waiver in this regard is often explained through the metaphor that the "attorney-client privilege cannot at once be used as a shield and a sword." *Id* (*quoting United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)). This type of waiver is applied narrowly, limited to the extent that "fairness requires examination of [otherwise] protected communications" by the opposing party for any privileged communications relied upon by a litigant to support a claim or defense. *Id* at 453; *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005). The Federal Circuit has recognized privilege waivers in patent infringement cases by applying a materially similar rationale. *See In re EchoStar*, 448 F.3d at 1301 ("when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter.")

Under the law of the Federal Circuit, a party may invoke the crime-fraud exception to the attorney-client privilege upon making a *prima facie* showing of the commission of a fraud against

the United States Patent Office ("PTO") such as necessary to support a claim of inequitable conduct. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000). To establish a *prima facie* case of inequitable conduct, Plate must show that Defendants "acted with the specific intent to deceive the PTO" by deliberately withholding from the PTO information material to inventorship or prior art material to enforceability. *Therasense, Inc.*, 649 F.3d at 1290; *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322 (Fed. Cir. 2000).

### B. Defendants' Reliance on Advice of Counsel Constitutes a Waiver of the Communication's Privilege Limited to the Analysis of Plate's then Pending Patent in the View of Prior Art References Urchek and Fiorucci

Throughout this case, Defendants have relied on Mr. Hoffmeister's conclusory statements regarding his analysis of the effect Urchek and Fiorucci have on the Plate's Patent Family. Defendants first did so by incorporating Paragraph 34 of Mr. Loveday IV's declaration into the MPI Response. (Doc. 18 at p. 2). Defendants have continued to do so by alleging in the counterclaims that Mr. Hoffmeister "wrote counsel for Plate on or about January 27, 2017, explaining why the [applicable] Patent[s] were invalid" and by attaching this letter to their counterclaims. (Doc. 111 at ¶¶ 34 and 66). Finally, each of Defendants' affirmative defenses for invalidity of the Asserted Patents incorporate the allegations in the aforementioned counterclaims. (Doc. 111 at pp. 20-21).

The fact that Defendants have not specifically pled "advice of counsel" as affirmative defense should have no bearing on the Court's ruling because Defendants have significantly and regularly injected the advice of their legal counsel into the substantive merits of this lawsuit, thereby improperly using privilege as both a "sword and a shield." *In re EchoStar*, 448 F.3d at 1301; *In re Lott*, 424 F.3d at 454. Defendants have done so most notably by incorporating the advice of counsel into the MPI Response and by including the same in the counterclaim allegations

as well. "To prevent such abuses" this Court must hold that Defendants "waive[d] the attorney-client privilege as to all such communications regarding" Mr. Hoffmeister's September and October 2016 analysis of Urchek and Fiorucci in view of Plate's then pending patents. *In re EchoStar*, 448 F.3d at 1301.

In these types of cases "fairness requires examination of protected communications." *In re Lott*, 424 F.3d at 457. "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter. *In re EchoStar*, 448 F.3d at 1299. In light of this scope, for purposes of this argument Plate seeks only the specific advice of counsel analysis that has been substantively inserted into this litigation, which is Mr. Hoffmeister's analysis of Plate's Patent Family and his related analysis of prior art references Urchek and Fiorucci.

In cases with nearly identical facts as those present here, courts have applied limited privilege waivers based on the insertion of privileged information into the merits of the case. *See Zen Design Grp. Ltd. v. Scholastic, Inc.*, 327 F.R.D. 155, 164 (E.D. Mich. 2018); *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 470 (E.D. Mich. 2008). In *Zen Design*, defendants sought the advice of counsel ("Counsel 1") after receiving a notice of patent infringement from plaintiff. *Zen Design*, 327 F.R.D. at 158. Counsel 1 provided advice to defendants regarding the enforceability of the patents at issue, handled pre-suit negotiations with plaintiff, and coordinated with another attorney who defendant hired solely to provide an opinion on the asserted patents ("Counsel 2"). *Id.* After plaintiff filed suit, defendant asserted an advice of counsel defense and plaintiff sought discovery of the otherwise privileged information, so related. *Id.* The court granted plaintiff's discovery requests including initial Counsel 1's pre-suit communications with Counsel 2 and the pre-suit analysis Counsel 1 derived from Counsel 2's opinion because "[i]t would be illogical to shield

from discovery the very conduct that is dispositive of whether infringement was committed wilfully." *Id* at 164. The communications by Counsel 1 regarding the "infringement opinion prior to suit may provide insight into whether [d]efendant's "continued accused activities were done in good faith,"" as well as "whether [d]efendant "acted despite a risk of infringement" that was known." *Id* (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1369 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016); *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016). For the same reasons as the plaintiff in *Zen Design*, Plate requests Mr. Hoffmeister's communications and his work product analysis from September and October 2016 regarding Plate's then pending patents and the impact prior art references Urchek and Fiorucci had on them.

Factually, *Henry* is even more on point in comparison to Defendants actions in this case even though *Henry* is not a patent infringement case; rather, it is a Fair Labor Standards Act ("FLSA") case, which also involves the issue of willful breach by defendants and reliance on advice of counsel. *Henry*, 263 F.R.D. at 459. In support of defendants' motion for summary judgment on the issue of "good faith," defendants filed an affidavit from a company employee who stated he believed the company complied with the pertinent laws based on his ongoing review the regulations along with "ongoing consultation with the Company's legal and HR departments." *Id* at 462. Applying the governing Sixth Circuit precedent from *Lott*, which is materially similar to the standards set forth in *In re EchoStar*, the court held that defendants waived privilege to the issue of "good faith" "[b]y accompanying the motion [for summary judgment] with the [employee] affidavit that stated that the [FSLA decisions were] made in ongoing consultation with counsel" and by making arguments therein based on the same. *Id* at 470.

Here, this is exactly what Defendants did by incorporating into the MPI Response Mr. Loveday IV's testimony that "[a]fter further review and consultation with patent counsel, I, remained concerned the Plate design could not obtain meaningful patent protection due to the prior art. I was also concerned any patents that might issue would later be found to be invalid." (Doc. 18-1 at ¶34). Fairness and governing Federal Circuit law require that the communications between Defendants and Mr. Hoffmeister as limited in scope to the topics at issue herein be discoverable and not protected by any privilege.

**C.  Defendants Waived Privilege through the Disclosure of Mr. Hoffmeister's Conclusions Regarding the Prior Art to a Third-Party**

Defendants waived the attorney-client privilege by sending the January 27, 2017 response to Plate's demand letter because the letter included Mr. Hoffmeister's legal conclusion that "Fiorucci and Urchek appear to anticipate or render obvious the subject matter of the Plate [Patent] Application." *See* Exhibit 1**.**  This constitutes a waiver under Sixth Circuit law because it is the disclosure of not only counsel's final legal conclusion – that Plate's patents were invalid – but also because it includes reference to specific prior art that supports the conclusion.  *In re Grand Jury 1995*, 78 F.3d at 254 (defendants waived privilege by disclosing counsel's conclusion and grounds supporting the same).  The Federal Circuit, applying a similar application of the privilege waiver under Ninth Circuit law, ruled in a patent case that defendants waived privilege by stating in a sales letter that the company's patent counsel found no potential infringement after searching "U.S. patent literature."  *In re Target Tech. Co. LLC*, 208 F. App'x 825, 826-27 (Fed. Cir. 2006).  The logic behind the ruling was that fairness "prohibits a privilege holder from disclosing portions of privileged communications and withholding other portions."  *Id* at 826.  Here, fairness requires that Defendants disclose all aspects of Mr. Hoffmeister's analysis regarding how Fiorucci and

Urchek anticipate or render obvious Plate's patents because anything less would allow Defendants to selectively choose how and when the rules of privilege apply.

### D. The Attorney Work Product Doctrine Does Not Protect Patent Counsels' Analysis of Prior Art References Urchek and Fiorucci

Mr. Hoffmeister's analysis that Defendants put at issue in this case, and which Plate has sought discovery of may be limited to September and October of 2016. At this time, litigation had not been considered by either party, let alone threatened or otherwise imminent. In fact, during this time period the parties were actively discussing potential business plans and were negotiating potential financial arrangements related to the same. Not until Plate sent the initial demand letter on January 10, 2017 did either party take any steps toward litigation. Under both Federal Circuit and Sixth Circuit law, the work-product privilege only protects "documents prepared in anticipation of litigation by or for the attorney." *In re Antitrust Grand Jury*, 805 F.2d at 163; *see also In re EchoStar*, 448 F.3d at 1301.

Further, under Federal Circuit law while the work product of "trial counsel" is protected despite the assertion of an advice of opinion counsel defense, the same protection does not extend to the work product of the opinion counsel. *Compare In re Seagate*, 497 F.3d at 1376 ("relying on opinion counsel's work product does not waive work product immunity with respect to trial counsel") *with In re EchoStar*, 448 F.3d at 1303 (work product documents not communicated to client but so related to the subject matter supporting the advice provided is discoverable). For these reasons, Mr. Hoffmeister's work product related to his analysis of prior art in view of Plate's then pending patents in September and October 2016, as well as the work product related to his analysis set forth in the January 27, 2017 response letter are all discoverable by Plate.

## E. *Prima Facie* Evidence Supporting Plate's Inequitable Conduct Claim Satisfies the Crime-Fraud Exception to Privilege

To qualify as a joint inventor, an "inventor must contribute in some significant manner to the conception of the invention." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997). To contribute to the conception of the invention means to contribute to the "arrival at a definite and permanent idea of the invention as it will be used in practice." *Id.* "As a critical requirement for obtaining a patent, inventorship is material" to the patentability of an invention. *PerSeptive Biosystems*, 225 F.3d at 1321.

The evidence of the correspondence between the parties supports that Plate provided Defendants with the contents of his then pending patent application, descriptions and explanations of the inventions described in the same, and prototypes that physically embodied the scope of the invention in the patent application. Defendants' Privilege Log demonstrates that Defendants provided this same information to patent counsel, Mr. Hoffmeister, prior to his completion of the first draft of the '451 Provisional Application. *See* Exhibit 2. The intrinsic evidence provided from a review of the '451 Provisional Application, the ETS '154 Patent, the ASFM GLK/9 XX PROTOTYPE 7.4, the '633 Patent, the '669 Patent, the '220 Patent, and the '547 Patent clearly shows that each contain the same, fundamental pivoting angle of **(56)**126°. Chris' conception of the **(56)**126° angle, which was incorporated into "rounds positioning chamber" featured in claim 1 of the ETS '154 Patent constitutes Chris' "arrival at a definite and permanent idea of the invention as it will be used in practice," and therefore necessitates Chris' inclusion as a joint-inventor of the ETS '154 Patent. *Id.*

The passing of less than five months between when Defendants' received Plate's intellectual property and filed the '451 Provisional Application, which included the same intellectual property, is clear evidence of the fact that Defendants intentionally incorporated Plate's

intellectual property, and further that Mr. Loveday IV and Mr. Loveday III intentionally misrepresented to the PTO that they were the only inventors of the '451 Provisional Application. In doing so Mr. Loveday IV and Mr. Loveday III "acted with the specific intent to deceive the PTO" on a "central issue [material to patentability] —whether the named inventors were the sole inventors." *Therasense, Inc.*, 649 F.3d at 1290; *PerSeptive Biosystems*, 225 F.3d at 1322. On numerous occasions the Federal Circuit has affirmed rulings of inequitable conduct upon a showing of evidence that true inventors were intentionally concealed from the PTO. *See e.g. Id*; *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1377 (Fed. Cir. 2002); *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 830 (Fed. Cir. 2010).

Based on the foregoing, as supported by the attached documents, Plate has made a *prima facie* case establishing Defendants' inequitable conduct by committing a fraud on the PTO, with the assistance of Mr. Hoffmeister. Therefore, Plate has met the requirements necessary to invoke the crime-fraud exception to attorney-client privilege and all aspects of Mr. Hoffmeister's work product and communications with Defendants regarding the prosecution of the ETS '154 Patent should be disclosed. *Therasense, Inc.*, 649 F.3d at 1289.

### F. Defendants Remaining Objections Lack Merit

In response to Plaintiffs' Interrogatory No. 17, Defendants only raised objections on the ground of privilege; therefore, in light of Plate's arguments above, Defendants have raised no meritorious objections and must be compelled to provide a response to Interrogatory No. 17. *See* Exhibit 8. In response to Plaintiffs' Request for Production No. 73, Defendants raised objections that Plate's request was "overbroad" for requesting "all" documents and "unduly burdensome" for requesting potentially duplicative documents. *See* Exhibit 7. Although Plaintiffs' Request for

Production No. 73 requests "all" documents, this request is not overly broad because the scope of the request was still limited in scope as it only pertained to documents and communications between Defendants and Mr. Hoffmeister regarding Mr. Hoffmeister's analysis of prior art Urchek and Fiorucci in view of Plate's then pending patent applications, sufficient to support Mr. Loveday IV's testimony in Paragraph 34 of his Declaration. Plate's document request in Request for Production No. 73, as it relates to otherwise privileged document, cannot be duplicative because Defendants have relied on their privilege objections to this point and have not produced any attorney-client communications or attorney analysis regarding the same.

## V.    CONCLUSION

For the aforementioned reasons this Court should grant Plate's Motion to Compel and issue an order for Defendants (1) to produce documents responsive to Request No. 73 of Plate's Second Set of Requests for the Production, (2) to provide written answers responsive to Interrogatory No. 17 of Plate's First Set of Interrogatories, (3) to compel testimony from J. Kenneth Hoffmeister due to waiver of attorney-client privilege and work product, (4) that attorney-client privilege has been waived between J. Kenneth Hoffmeister and Defendants in regard to potential business with Plate and the prosecution of the issued U.S. Patent No. 10,317,154 for the date ranges of July 29, 2016 to January 27, 2017; and (5) that work product privilege has been waived between J. Kenneth Hoffmeister and Defendants in regard to potential business with Plate and the prosecution of the issued U.S. Patent No. 10,317,154 for the date ranges of July 29, 2016 to January 27, 2017. Plaintiffs request that the order require Defendants or defense counsel pay costs, including reasonable attorney's fees, for preparation of this Motion to Compel.

DATED this 3rd day of January, 2020.

By:  s/Van R. Irion
        Van R. Irion

TN Bar Number 024519
Law Office of Van R. Irion
800 South Gay Street, Suite 700
Knoxville, TN 37929
***Attorney for Plaintiffs/Counter-Defendant***

By: s/William M. Fischbach
    William M. Fischbach
    Arizona Bar Number: 019769
    Jack R. Vrablik
    Arizona Bar Number: 034352
    Tiffany & Bosco, P.A.
    2525 East Camelback Road, Seventh Floor
    Phoenix, AZ 85016
    ***Attorney for Plaintiffs/Counter-Defendant,***
    ***Pro Hac Vice***

## CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF registrants:

John Winemiller, Esq.
Brad Brittian, Esq.
Ian McFarland, Esq.
Merchant & Gould
9717 Cogdill Road, Suite 101
Knoxville, TN 37932
Telephone: 865-380-5972
JWinemiller@merchantgould.com
BBrittian@merchantgould.com
IMcFarland@merchantgould.com
**Counsel for Defendants/Counterclaimants**

*/s/ William M. Fischbach*

## CERTIFICATION PURSUANT TO FEDERAL RULE 37

I hereby certify that I have in good faith conferred or attempted to confer with Defendants in failing to make disclosure or discovery in an effort to obtain it without court action.

*/s/ William M. Fischbach*

25