UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

PLATE, LLC and CHRISTOPHER PLATE, )
)
        Plaintiffs, )
)
v. )        No. 3:18-CV-265-CLC-HBG
)
)
ELITE TACTICAL SYSTEMS, LLC, )
JIM HANSEN, GEORGE LOVEDAY, III, )
and GEORGE LOVEDAY, IV, )
)
        Defendants. )

## <u>MEMORANDUM AND ORDER</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiffs' Motion to Compel [Doc. 130]. Defendants subsequently filed a response in opposition [Doc. 133], to which Plaintiffs filed a reply in support of their motion to compel [Doc. 139]. Ultimately, for the reasons set forth below, Plaintiffs' Motion to Compel [Doc. 130] will be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND

This patent infringement and breach of contract suit revolves around U.S. Patent Application No. 14/979,051 (the "'051 Application"), which matured into U.S. Patent No. 9,618,286 (the "'286 Patent"), as well as the remainder of the "Plate Patent Family." *See* [Doc. 130 at 6]. On or about July 29, 2016, Plaintiff Christopher Plate ("Plate") and Defendant Jim Hansen ("Hansen") executed a non-disclosure agreement (the "Plate NDA"), intended for Defendant Elite Tactical Systems, LLC ("ETS") to evaluate Plaintiff Plate LLC's patent pending magazine loader prototype products for potential business opportunities. On August 8, 2016, Plate

sent a copy of the '051 Application, as well as physical prototypes and videos of the prototypes in action to ETS. The parties communicated about what differentiated Plaintiffs' pending patents from two prior art references—Published Patent Application No. 2003/0046854 ("Urchek") and No. 2014/0033592 ("Fiorucci")—in September of 2016.[1] While Plaintiffs note that Defendant George Loveday IV ("Loveday IV") responded that Plate's analysis was "promising," [Doc. 130 at 4], Defendants detail that Plate also stated "[i]t's anyone's guess if [the patent application] will get granted." [Doc. 133 at 3]; *see* [Doc. 18-16].

Next, a phone call was held on or about October 4, 2016 between Plate, Hansen, and Loveday IV. Plaintiff alleges that Loveday IV stated that he agreed with Plate's analysis of the prior art, but that ETS could not share further ideas on the magazine loaders until a mutual non-disclosure agreement was executed (the "ETS Mutual NDA"). Defendants deny the substance of this conversation except for the execution of the ETS Mutual NDA. The ETS Mutual NDA was then executed on October 6, 2019.

Defendants claim that Loveday IV exchanged email messages with ETS's patent counsel, Attorney Ken Hoffmeister ("Hoffmeister"), about a provisional patent application for an ammunition magazine on October 31, 2016 and November 1, 2016, with the subject line: "0011.00090US DRAFT Provisional Patent Application for Review." [Doc. 133 at 4]. Hoffmeister then filed provisional patent application No. 62/415,787, titled "Ribless Double Stack Ammunition Magazine," on November 1, 2016. [*Id.*].

---

[1] Plaintiffs state that on or about September 9, 2016, Defendant George Loveday, IV ("Loveday IV"), emailed Plate about what differentiated his pending patent applications from the prior art references, to which Plate responded via email on or about September 17, 2016 with additional analysis. [Doc. 130 at 4]. Defendants state that "[t]he parties communicated about the references on several occasions, including September 16, 17, and 26, 2016." [Doc. 133 at 3].

Plaintiffs claim that on or about December 22, 2016, Hoffmeister filed a provisional patent application No. 62/438,451 ("the '451 Provisional Application"), entitled "Firearm Magazine Loader," which lists Defendants Loveday IV and Loveday III as the only inventors. [Doc. 130 at 9]; *see* [Doc. 130-3]. Additionally, Hoffmeister filed Patent Application No. 15/851,687 (the '687 Application"), entitled "Firearm Magazine Loader," on December 21, 2017, which claims priority to the '451 Provisional Application. [*Id.*]; *see* [Doc. 130-4]. Lastly, Plaintiffs note that the '687 Application was issued as United States Patent No. 10,317,154 ("the '154 Patent"), entitled "Firearm magazine loader," on June 11, 2019. [*Id.*]; *see* [Doc. 130-5].

However, Plaintiffs allege that no further substantive communications with Defendants took place after receiving the executed ETS Mutual NDA, and Plate subsequently saw a video on an ETS social media page demonstrating a magazine loading device on or about December 23, 2016. Plaintiffs then served a cease and desist letter on ETS on or about January 10, 2017, accusing it of breaching the Plate NDA. Hoffmeister responded on behalf of ETS on January 27, 2017, stating, in relevant part:

> About August 2016, your client provided ETS with a copy of a pending patent application ("the Plate Application") and a rough prototype. Subsequently, your client also shared prior art in the form of U.S. Published Patent Application 2014/0033592 ("Fiorucci") and expressed concern with Fiorucci. Investigation of Fiorucci led to discovery U.S. Published Patent Application Number 2003/0046854 ("Urchek"). We trust that you can readily obtain copies of these references, but will gladly provide them if requested. Upon review, Fiorucci and Urchek appear to anticipate or render obvious the subject matter of the Plate Application.

[Doc. 130-1 at 2].

Defendants then claim that the '051 Application was allowed on its original claims on January 12, 2017, Plaintiffs filed a request for continued examination on February 3, 2017, and "simultaneously amended the claims, arguing the amended claims were patentable over Urchek and Fiorucci." [Doc. 133 at 4].

3

Plaintiffs filed the instant lawsuit on June 26, 2018, asserting claims of fraudulent inducement, breach of contract of the Plate NDA, and patent infringement. *See* [Doc. 1].[2] Subsequently, Plaintiffs moved for a preliminary injunction on July 2, 2018. [Doc. 11]. In response to Plaintiffs' motion for a preliminary injunction, Defendants filed a response, which included the declaration of Loveday IV in support (the "Loveday Declaration"). [Docs. 18, 18-1]. At issue in the Loveday Declaration is his statement that:

> On or about October 10, 2016, I met with ETS's patent counsel to discuss the prior art references. After further review and consultation with patent counsel, I remained concerned the Plate design could not obtain meaningful patent protection due to the prior art. I was also concerned any patents that might issue would later be found to be invalid.

[Doc. 18-1 at ¶ 34]. Additionally, Plaintiffs point to Loveday IV's declaration that on August 16, 2016, he participated in a telephone conversation with Plate and Hansen, "[a]t the time, he [Plate] had only shown us videos of early prototypes and a patent application that had not issued," and Loveday IV "had not yet received ETS's patent counsel's [Hoffmeister's] analysis and evaluation of those materials." [*Id.* at ¶ 22].

ETS served its initial privilege log on January 28, 2019. [Doc. 130-2]. Plaintiffs challenge Entry Number 10, which "indicates that Mr. Loveday IV sent Mr. Hoffmeister an email 'requesting legal advice about patent issue related to Plate matter, with 3 attachments;'" Number 15, which "indicates that Mr. Loveday IV and Mr. Hoffmeister exchanged emails regarding 'legal advice sought and received about patent issue related to Plate matter;'" Number 12, which "indicates that Mr. Loveday IV emailed . . . Hoffmeister, on September 17, 2019, 'requesting legal advice about patent issue related to Plate matter;'" and Number 1, which "indicates that also on September 17,

---

[2] ETS answered Plaintiffs' Amended Complaint, stating several counterclaims that "Plate had sued despite its knowledge of the invalidity problems gained from the Hoffmeister Letter, thus justifying an award of attorney fees" on September 17, 2019. [Doc. 133 at 6]; *see* [Doc. 111].

4

2016, Mr. Loveday IV sent a text message and picture to Mr. Hansen 'reflecting legal advice being sought about patent issue related to Plate Matter.'" [Doc. 130 at 7 (quoting Doc. 130-2)].[3]

Plaintiffs then served their First Set of Interrogatories and Second Set of Requests for Production on May 31, 2019. In a letter accompanying Document Request No. 73 and Interrogatory No. 13, Plaintiffs' counsel asserted that these requests are discoverable because Defendant Loveday IV "implicitly waived the attorney-client privilege through his statements in Paragraph 34 of his July 20th, 2018 Declaration." [Doc. 130-10 at 2]. Plaintiffs' counsel maintained that as the Declaration was submitted as an exhibit to Defendants' response to the motion for a preliminary injunction, Defendants "relied upon Mr. Loveday's consultation with patent counsel to support Defendants' arguments regarding the effect of the alleged prior art on the validity of Plate's patents." [*Id.* at 3]. Defendant ETS served its objections and response to these discovery requests on July 1, 2019 [Doc. 130-8], and between July 17, 2019 and July 30, 2019, counsel exchanged a series of emails regarding ETS' objections and response to Document Request No. 73 [Doc. 130-9].

The Court held a concurrent *Markman* hearing with *Plate LLC v. RCTenn, LLC*, No. 3:18-cv-306, a case proceeding in the Middle District of Tennessee on June 10, 2019. *See* [Doc. 84]. Plaintiffs filed the instant Motion to Compel on January 3, 2020. [Doc. 130]. However, on May 26, 2020, the Court continued upcoming claim construction deadlines and the *Markman* hearing for Defendant ETS' newly issued '154 Patent, as well as stayed the case pending the resolution of

---

[3] Defendants note that ETS served a first supplemental privilege log on August 28, 2019 which "added information describing the subject matter of the provisional application identified in Entry 14," noting that the "document logged in Entry 14 was not a responsive document, because it related to an ammunition magazine, not a loader." [Doc. 133 at 6]; *see* [Doc. 133-4].

5

Plaintiffs' reissue applications for the '455 Patent. [Doc. 159]. The Court then entered an Amended Scheduling Order [Doc. 170] on July 16, 2020.

## II.    POSITIONS OF THE PARTIES

Plaintiffs seek [Doc. 130] for the Court to order Defendants to produce the responsive documents to their Second Request for Production No. 73, to provide written answers responsive to Interrogatory No. 17, and to compel testimony from Hoffmeister due to the waiver of attorney-client privilege and the work product doctrine. Additionally, Plaintiffs move for the Court to find that the attorney-client privilege and the work product protection have been waived between Hoffmeister and Defendants regarding potential business with Plaintiffs and the prosecution of the '154 Patent from July 29, 2016 to January 27, 2017.

Plaintiffs assert that Defendants waived the attorney-client privilege and work product protection by relying on Hoffmeister's conclusory statements regarding his analysis of the effect that Urchek and Fiorucci have on Plaintiffs' patents by incorporating Paragraph 34 of Loveday IV's Declaration into its Response [Doc. 18] to Plaintiffs' motion for a preliminary injunction, as well as through Defendants' assertions in their counterclaims and affirmative defenses. Plaintiffs maintain that although Defendants have not specifically pled the "advice of counsel" as an affirmative defense, they "have significantly and regularly injected the advice of their legal counsel into the substantive merits of this lawsuit." [Doc. 130 at 20]. Moreover, Plaintiffs assert that Defendants waived the attorney-client privilege through their January 27, 2017 response to Plaintiffs' cease and desist letter (the "Hoffmeister Letter"), which included Hoffmeister's "legal conclusion that 'Fiorucci and Urchek appear to anticipate or render obvious the subject matter of the Plate [Patent] Application.'" [*Id.* at 23]. Additionally, Plaintiffs maintain that they have set forth a prima facie showing of Defendants' fraud on the United States Patent and Trademark Office

("PTO") by omitting Plaintiffs as a joint inventor for the '154 Patent, thus satisfying the requirements to invoke the crime-fraud exception to attorney-client privilege.

Plaintiffs claim that the work product doctrine does not protect Hoffmeister's analysis of prior art references Urcheck and Fiorucci in September and October of 2016, as litigation had not been considered by either party at this time. However, Plaintiffs state that should privilege under the work product doctrine be deemed to apply, it should be waived in regard to any work product completed by Hoffmeister that was addressing the same subject matter at issue regarding attorney-client privilege.

Lastly, Plaintiffs certify that they have "in good faith conferred or attempted to confer with Defendants in failing to make disclosure or discovery in an effort to obtain it without court action." [*Id.* at 3]. Plaintiffs state that they provided Defendants with "notice and supporting rationale" for why their discovery requests included requests for otherwise privileged documents, and Defendants did not respond to their May 31, 2019 letter or "support their privilege objections with any support for why communications or work product privilege applied." [*Id.*].

Defendants respond [Doc. 133] that they have not expressly, nor impliedly, waived the attorney-client privilege or work product immunity. First, Defendants maintain that the assertion of the crime fraud exception is frivolous and not applicable in the present case, as Plaintiffs cannot demonstrate a specific intent to deceive. Additionally, Defendants assert that there was no waiver of the attorney-client privilege or work product immunity as the Hoffmeister Letter "disclosed no substance of his communications with ETS" and "did not disclose to Plate any findings, conclusion or analysis." [*Id.* at 14]. Next, Defendants claim that the Hoffmeister Letter, the Loveday Declaration, and ETS's answer and counterclaims did not impliedly waive attorney-client privilege

7

or work product immunity as Defendants maintain that they have not invoked an advice-of-counsel defense.

Plaintiffs reply [Doc. 139] that Defendants ignore the importance of conception to establish that Plate was a joint inventor of the '154 Patent, and thus the crime-fraud exception is applicable. Additionally, Plaintiffs allege that Hoffmeister "did not only offer his legal conclusion, but provided the underlying reasons for the conclusion, to wit, that Fiorucci and Urchek—specifically—appear to anticipate or render obvious the subject matter of the Plate [Patent] Application." [*Id.* at 7].

## III.    STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  Courts have explained that the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad."  *Meredith v. United Collection Bureau, Inc.*, 319 F.R.D. 240, 242 (N.D. Ohio 2017) (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)).  Further, the proponent of a motion to compel discovery bears the initial burden of demonstrating relevance.  *See Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *Anderson v. Dillard's, Inc.*, 251 F.R.D. 307, 309–10 (W.D. Tenn. 2008).

Additionally, pursuant to Federal Rule of Civil Procedure 37(a)(1), a party may move for an order compelling disclosure or discovery.  "The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make

disclosure of discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). "The scope of discovery is, of course, within the broad discretion of the trial court. An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Pearce v. Chrysler Grp., LLC Pension Plan*, 615 F. App'x 342, 350 (6th Cir. 2015) (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)).

Next, "[t]he attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 06-00253, 2015 WL 13649574, at *2 (N.D. Ohio Apr. 17, 2015) (quoting *Genentech, Inc. v. United States ITC*, 122 F.3d 1409, 1415 (Fed. Cir. 1997)); *see also Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005) ("The attorney-client privilege protects from disclosure confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client.") (quoting *In re Grand Jury Subpoena*, 886 F.2d 135, 137 (6th Cir. 1989)). "While the attorney-client privilege is narrowly construed to avoid overly restricting discovery, its scope is determined in light of its purpose—to increase full and frank communication between an attorney and his client." *Zen Design Grp. Ltd. v. Scholastic, Inc.*, 327 F.R.D. 155, 159 (E.D. Mich. 2018). The privilege "protects only those communications necessary to obtain legal advice." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). Lastly, "[t]he burden of establishing that the attorney-client privilege is applicable to particular communications rests with the party asserting the privilege." *Zen Design Grp. Ltd.*, 327 F.R.D. at 159 (citing *United States v. Krug*, 379 F. App'x 473, 478 (6th Cir. 2010); Fed. R. Civ. P. 26(b)(5)).

The work product doctrine "is distinct from and broader than the attorney client privilege." *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 304 (6th

Cir. 2002). Work product protection extends beyond confidential communications between the attorney and client to "any document prepared in anticipation of litigation by or for the attorney." *Id.* The doctrine is codified in Federal Rule of Civil Procedure 26(b)(3)(A), which states in pertinent part that a party may not ordinarily discover—save for a showing of "undue hardship"—documents or tangible things that are prepared in anticipation of litigation . . . by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).

"While the attorney-client privilege protects only confidential communications, the work product doctrine generally protects from disclosure documents prepared by or for an attorney in anticipation of litigation." *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 713 (6th Cir. 2006) (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986)). However, "there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege." *In re Columbia*, 293 F.3d at 306.

With respect to discovery issues, "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law." *In re MSTG, Inc.*, 675 F.3d 1337, 1341 (Fed. Cir. 2012) (quoting *Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1307 (Fed. Cir. 2001)); *see ProCom Heating, Inc. v. GHP Grp., Inc.*, No. 1:13-CV-163-GNS, 2016 WL 3659137, at *3 (W.D. Ky. May 11, 2016) ("Whether and to what extent a party waives the attorney-client privilege by asserting the defense of reliance upon the advice of counsel is an issue of substantive patent law, thus this Court looks to precedent from the Federal Circuit for guidance.") (citing *In re EchoStar Commc'n Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006)); *but see 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 1:06-CV-253, 2016 WL 111443, at *4 n.3 (N.D. Ohio Jan. 10, 2016) ("As is evident from the magistrate judge's order and the parties' briefing on

10

Communique's objections, there is little federal circuit precedent with respect to implied waiver of attorney-client privilege.").

However, Plaintiffs also claim that Defendants have waived the attorney-client privilege and work product protection through voluntary disclosure—to which both parties cite applicable Sixth Circuit law. *See, e.g.*, *Cequent Performance Prod., Inc. v. Hopkins Mfg. Corp.*, No. 13-CV-15293, 2017 WL 2264784, at *2 n.4 (E.D. Mich. May 24, 2017) ("While this is a patent infringement action, the Federal Circuit 'applies the law of the regional circuit, here the [Sixth] Circuit, with respect to questions of attorney-client privilege and waiver of attorney-client privilege.'") (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1346 (Fed. Cir. 2005)); *see also In re Regents of University of California*, 101 F.3d 1386, 1390 n.2 (Fed. Cir. 1996) (applying Seventh Circuit law to attorney-client privilege issue and noting that "[f]or procedural matters that are not unique to patent issues, [the Federal Circuit] appl[ies] the perceived law of the regional circuit").

## IV.   ANALYSIS

### A.   Attorney-Client Privilege

#### 1.   Voluntary Disclosure to Third Parties

Plaintiffs first claim that Defendants have waived attorney-client privilege "by sending the January 27, 2017 response [the Hoffmeister Letter] to Plate's demand letter because the letter included Mr. Hoffmeister's legal conclusion that 'Fiorucci and Urchek appear to anticipate or render obvious the subject matter of the Plate [Patent] Application.'" [Doc. 130 at 23]; *see* [Doc. 130-1].

"As a general rule, the 'attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties.'" *In re Columbia/HCA*

11

*Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 306 (6th Cir. 2002) (quoting *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996)); *see also New Phoenix Sunrise Corp. v. C.I.R.,* 408 F. App'x 908, 918 (6th Cir. 2010) ("Both the attorney-client privilege and work-product protection are waived by voluntary disclosure of private communications to third parties.").

In *In re Grand Jury Proceedings*, the Sixth Circuit addressed the waiver of attorney-client privilege when the owner and president of a laboratory voluntarily disclosed the substance of their attorney's advice regarding their marketing plan to government agents investigating the laboratory for "improperly inducing nursing homes to give it business and seeking reimbursement from Medicare for tests performed by nursing home personnel." 78 F.3d at 253. The Sixth Circuit differentiated from past cases, finding that "the owner and president of the laboratory did discuss the substance of their attorney's advice," as they told investigators that "the attorney approved some parts of the plan and recommended they discontinue other parts," the disclosed information "revealed their attorney's legal conclusions and facts on which those conclusions were based," and the "president and owner revealed both the legal conclusion and the reasoning behind the conclusion." *Id.* at 254.

Here, while the Hoffmeister Letter included the legal conclusion that the prior art references "appear to anticipate or render obvious the subject matter of the Plate [Patent Application" [Doc. 130-1], it did not discuss "the reasoning behind the conclusion." *In re Grand Jury Proceedings*, 78 F.3d at 254. The Court disagrees with Plaintiffs' contentions that "Hoffmeister did not only offer his legal conclusion but provided the underlying reasons for the conclusion, to wit, that Fiorucci and Urchek—specifically—appear to anticipate or render obvious the subject matter of the Plate [Patent] Application." [Doc. 139 at 7].

12

In a patent infringement case, the Southern District of Ohio addressed where the defendant intentionally disclosed abridged copies of patent opinion letters to various co-defendants, the codefendants' customers, and the plaintiff. *See Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-CV-552, 2013 WL 3778740, at *1 (S.D. Ohio July 18, 2013). The *Procter & Gamble* Court found that "Defendants disclosed the abridged opinions to assuage their customers' concerns, and, in so doing, waived the privilege as to all related communications." *Id.* at *3. Similarly, in *V. Mane Fils S.A. v. Int'l Flavors and Fragrances, Inc.*, the defendant disclosed several opinion letters from counsel concerning the alleged invalidity of patents owned by the plaintiff to potential investors. No. 06–2304, 2008 WL 619207 at *1 (D.N.J. March 4, 2008). The *V. Mane Fils* Court found that the defendant had waived the attorney-client privilege by disclosing the opinion letters to its potential customers and to the plaintiff's counsel as "the privilege cannot be used as both a sword and a shield." *Id.* at *4.

Ultimately, the Hoffmeister Letter did not disclose a "significant part" of a privileged communication between Defendants and their counsel. *In re Grand Jury Proceedings*, 78 F.3d at 254. Other than stating the broad legal conclusion, the Hoffmeister Letter did not specifically analyze the Fiorucci and Urchek patents or include any specific analysis. Additionally, the disclosure in this letter did not include the reasoning behind Hoffmeister's opinion provided to Defendants or reveal any further communications with Defendants. Unlike in *Procter & Gamble*, where "the four-page abridged opinions reveal counsel's detailed legal analysis, opinions, and facts," Hoffmeister merely responded to a cease and desist letter on behalf of Defendants and stated that the prior art references appear to render obvious the subject matter of Plaintiffs' patents. *See* 2013 WL 3778740, at *2. Defendants did not disclose the substance of their patent counsel's opinion, rather they responded to a cease and desist letter regarding Plaintiffs' patents and their

13

business relationship. Additionally, Defendants did not disclose a patent opinion letter for commercial purposes.

Accordingly, the Court finds that Defendants did not waive attorney-client privilege or work product protections through the Hoffmeister Letter, as they did not voluntarily disclose the substance of attorney-client communications.

### 2. Implied Waiver–Advice of Counsel

Plaintiffs assert that Defendants' reliance on the advice of their patent counsel, Hoffmeister, constitutes a waiver of the attorney-client privilege and work product protection, limited to his analysis of Plaintiffs' then pending patent in the view of the prior art references. Plaintiffs allege that Defendants have relied on Hoffmeister's "conclusory statements regarding his analysis of the effect Urchek and Fiorucci have on the Plate's Patent Family" by incorporating Paragraph 34 of the Loveday Declaration into their Response to the Motion for Preliminary Injunction, their allegations in the asserted counterclaims, as well as Defendants' affirmative defenses. [Doc. 130 at 20]. Plaintiffs acknowledge that Defendants did not specifically assert an advice of counsel defense but maintain that they have "significantly and regularly injected the advice of their legal counsel into the substantive merits of this lawsuit." [*Id.*].

Defendants respond that they have not impliedly waived attorney-client privilege or work product immunity, as "ETS has not affirmatively asserted an advice-of-counsel defense and because none of the documents reveals ETS' specific reliance on Mr. Hoffmeister's advice as a basis of an asserted claim or defense." [Doc. 133 at 15].

The attorney-client privilege "may implicitly be waived when the defendant asserts a claim that in fairness requires examination of protected communications." *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005) (internal citation omitted); *see also In re Lott*, 424 F.3d 446, 454

14

(6th Cir. 2005) ("[L]itigants cannot hide behind the privilege if they are relying upon privileged communications to make their case."). Additionally, "[a] party may impliedly 'waive the attorney-client privilege when, for instance, it uses the advice to establish a defense.'" *See 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 1:06-CV-00253, 2015 WL 13649574, at *3 (N.D. Ohio Apr. 17, 2015) (quoting *In re EchoStar Commc'n Corp.*, 448 F.3d 1294, 1298 (Fed. Cir. 2006)).

In *EchoStar*, the Federal Circuit detailed that "[o]nce a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived." 448 F.3d at 1299. "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Id.* (quoting *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)). Similarly, the Federal Circuit recognized "that when a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id.* at 1301.

If Defendants had asserted an advice of counsel defense, they "would attempt to show, through evidence of legal advice on which it relied, that it acted in good faith and did not act willfully." *Action Ink, Inc. v. Anheuser-Busch, Inc.*, No. CV 12-141, 2012 WL 12991010, at *2 (E.D. La. Nov. 9, 2012). "Assertion of an advice of counsel defense would expose [Defendants] to 'what has become known as the Quantum dilemma–the choice between asserting an advice of counsel defense to a claim of wil[l]ful [trademark] infringement and the resulting waiver of the attorney-client privilege[,] and not asserting the defense and risking a finding of liability.'" *Id.* at *2 (quoting *Brown v. Toscano*, 630 F. Supp. 2d 1342, 1349 (S.D. Fla. 2008) (internal quotation marks and citation omitted)); *see Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643–44 (Fed. Cir. 1991)).

In the seminal case of *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, albeit decided before *EchoStar*, the Third Circuit noted that the doctrine of implied waiver has been applied where a party "assert[s] claims or defenses that put his or her attorney's advice in issue in the litigation." 32 F.3d 851, 863 (3d Cir. 1994) (although not involving a patent claim). Moreover, "[i]n *Rhone-Poulenc*, the Third Circuit, in finding no waiver of privilege, noted that cases like *Hearn* 'appear to rest on a conclusion that the information sought is relevant and should in fairness be disclosed [but] [r]elevance is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of the issue.'" *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 1:06-CV-00253, 2015 WL 13649574, at *7 (N.D. Ohio Apr. 17, 2015) (quoting *Rhone-Poulenc*, 32 F.3d at 864 and discussing *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975)).

Plaintiffs' main argument is that Defendants have impliedly waived attorney-client privilege and work product protection by incorporating the Loveday Declaration into their Response to the Motion for a Preliminary Injunction. As detailed above, Paragraph 34 of the Loveday Declaration states that he met with Hoffmeister to "discuss the prior art references" and that "[a]fter further review and consultation with patent counsel, I remained concerned that the Plate design could not obtain meaningful patent protection due to the prior art." [Doc. 18-1 at ¶ 34]. Defendants note, however, that in their Response, they only cited to this paragraph in support of the statement that "Plate initiated contact with ETS on June 3, 2016, in an apparent attempt to forge some kind of business relationship regarding a pistol magazine it was working on." [Doc. 18 at 1]. The Court agrees that Defendants have not relied upon the advice of Hoffmeister in order to make its claims or defenses, as well as that they have not based their arguments in the Response

16

on Hoffmeister's advice. Further, although Defendants claimed that Plate was unlikely to succeed on the merits of its patent infringement claim because the patents at issue were invalid, they did not cite to Hoffmeister's analysis of the applicable patents and prior art references in support. *See* [Doc. 18 at 14]. Similarly, the Court does not find that the Hoffmeister Letter, in response to the cease and desist letter, places the advice of counsel at issue sufficient to waive attorney-client privilege.

Plaintiffs also point to Defendants' allegation in their counterclaims that Hoffmeister "wrote counsel for Plate on or about January 27, 2017, explaining why the [applicable] Patent[s] were invalid," and attached the Hoffmeister Letter. [Doc. 130 at 20]; *see* [Doc. 111 at ¶¶ 34, 66]. Additionally, Plaintiffs note that Defendants' affirmative defenses for invalidity incorporate the allegations set forth in these counterclaims. [Doc. 130 at 20]; *see* [Doc. 111 at p. 20–21].

However, Plaintiffs largely do not expand upon these allegations. Again, the Court notes that Defendants have not asserted an advice of counsel affirmative defense. *See* 1 McCormick on Evidence, § 93 (6th ed. 2006) ("[T]he problem of defining when such an issue has been interjected is an extremely difficult one. The cases are generally agreed that filing or defending a lawsuit does not waive the privilege."), *cited in Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 466 (E.D. Mich. 2008). Moreover, Defendants' arguments regarding the validity of the applicable patents do not place their state at mind at issue, such that they relied upon the Hoffmeister Letter and the advice of counsel. Defendants also do not rely upon communications with Hoffmeister as a basis for their defense or asserted counterclaims. *See Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) ("Thus, in a patent suit, where an infringer is alleged to have acted willfully, the advice of the infringer's lawyer may be relevant to the question of whether the infringer acted with a willful state of mind. However, the advice of the infringer's counsel is not

placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice.").

Additionally, Defendants cite to the Hoffmeister Letter "as evidence of [Plaintiffs'] knowledge after receiving it," [Doc. 133 at 21], as Defendants claim that Plaintiffs filed its infringement suit after it "had knowledge of those invalidity bases [set forth in the Hoffmeister Letter], and should have recognized their applicability to the claims of the '547 Patent prior to filing the Amended Complaint." [Doc. 111 at ¶ 126]. *See, e.g.*, *Sprint Commc'ns Co., L.P. v. Comcast Cable Commc'ns, LLC*, No. 11-2684-JWL, 2015 WL 11121848, at *1 (D. Kan. Apr. 16, 2015) (finding, in patent infringement case, that defendant's communications with counsel were not "inextricably merged with" the elements of their equitable estoppel affirmative defense and rejecting plaintiff's "underlying contention that pleading a claim or defense that has 'reasonableness' or 'reliance' as a necessary element places the advice of counsel 'at issue'").

Plaintiffs cite *Zen Design Grp. Ltd. v. Scholastic, Inc.*, 327 F.R.D. 155 (E.D. Mich. 2018) and *Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458 (E.D. Mich. 2008) as examples where "courts have applied limited privilege waivers based on the insertion of privileged information into the merits of the case." [Doc. 130 at 21]. However, as opposed to the present case, in *Zen Design Group*, the defendant in a patent infringement suit had "indicated its intention to rely on an opinion of counsel as a defense to willfulness." 327 F.R.D. at 158. Thus, the Eastern District of Michigan was not reviewing whether the defendant had impliedly waived the attorney-client privilege, but rather considered the extent of the waiver of such privilege to trial counsel. *Id.* at 162.

In *Henry*, a Fair Labor Standards Act case, the defendant asserted good faith as an affirmative defense and that it relied on the advice of counsel in determining that certain employees were not required to be paid overtime. 263 F.R.D. at 468. However, in support of their motion

18

for summary judgment, the defendant relied upon deposition testimony from a corporate designee stating that he believed that he complied with applicable laws and regulations based on his review on the regulations and "ongoing consultation with the Company's legal and HR departments." *Id.* at 462. The Eastern District of Michigan held that "when a party asserts a defense of good faith or reasonableness, and affirmatively offers testimony that the party consulted with their attorney as factual support for the defense, and when counsel's advice in some way supports the defendant's good faith belief, the defendant has put his counsel's advice 'at issue' and thereby waives the attorney client privilege on the narrow subject matter of those communications." *Id.* at 469. Specifically, the *Henry* Court found that "[b]y accompanying the motion with the Carroll affidavit that stated that the decision to classify the mortgage bankers as exempt was made in ongoing consultation with counsel and arguing in the motion that Quicken's attorneys confirmed Carroll's understanding of the regulations, Quicken has affirmatively asserted advice of counsel as a basis for its good faith." *Id.* at 470.

However, in the present case, Defendants have not "relied (even in small part) on privileged communications to make its case" or placed the advice of counsel at issue. *Id.* at 470. Defendants did not cite to Paragraph 34 of Loveday Declaration to defend against Plaintiffs' claims of willful infringement. Rather, Defendants correctly maintain that this section of the Loveday Declaration was cited to demonstrate their business relationship with Plaintiffs at the time. Similarly, in *Henry*, the magistrate judge found that the defendant did not waive the attorney-client privilege in its answers to interrogatories or pleading of an affirmative defense of good faith "because neither made attorney client communications a factual basis of [the defendant's] defense." *Id.* at 466. Here, Defendants have not relied upon Hoffmeister's opinion regarding invalidity or unenforceability of Plaintiffs' patents at issue to rebut the willful infringement allegations.

19

Additionally, Defendants have not affirmatively placed the opinion or advice of its counsel at issue at this time either as a defense for its conduct or as a basis for its counterclaims.

While Defendants' review of the applicable patents with Hoffmeister and the contents of the Hoffmeister Letter may be relevant, the contents of these communications are not placed at issue in Defendants' response to Plaintiffs' preliminary injunction, counterclaims, or affirmative defenses. *See 01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 1:06-CV-00253, 2015 WL 13649574, at *7 (N.D. Ohio Apr. 17, 2015) ("While the legal advice Citrix received with respect to the Tridia patents may be relevant, Citrix is not relying on that advice to show that the Tridia license is evidence of what a reasonable royalty for the technology at issue in this case would be."). Here, merely claiming that patents at issue are invalid does not automatically convert Defendants' arguments into an advice of counsel defense and Defendants' affirmative defenses and counterclaims do not require reliance on the advice of counsel.

Ultimately, Defendants have not "interjected the advice of counsel as an essential element of a claim in this case." *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994). Defendants have not asserted an advice of counsel defense, based their counterclaims or affirmative defenses on confidential communications, or placed Hoffmeister's legal opinion at issue at this time. *See, e.g.*, *Action Ink, Inc. v. Anheuser-Busch, Inc.*, No. CV 12-141, 2012 WL 12991010, at *2 (E.D. La. Nov. 9, 2012) (finding "no basis on the current record to conclude that [the] defendant has waived the attorney-client privilege by asserting an advice of counsel defense" in trademark infringement case as the defendant did not assert an advice of counsel affirmative defense or "affirmatively inject[ ] the defense into this action by responding to plaintiff's interrogatories or by noting in its opposition to a prior motion to compel that it conducted a trademark search and became aware . . . of plaintiff's alleged registration of the phrase" at issue);

20

*see also Fuji Photo Film Co. v. Benun*, No. 08-1927, 2008 WL 5084572, at *5 (D.N.J. Dec. 1, 2008) (in patent infringement case, finding defendant's testimony that "'the first thing we did was to contact the attorneys that the company relied upon and get their opinion as to exactly what we should do and how we should go forward' . . . does not constitute taking an affirmative step to place the substance of the advice of counsel in issue"), *aff'd sub nom.*, *In re Benun*, 328 F. App'x 659 (Fed. Cir. 2009).

"Given the importance of the attorney-client privilege and the magnitude of a defendant's decision to assert an advice of counsel defense in a patent case, the court declines to infer a waiver of privilege" in this case, as the Court "sees no benefit in holding [the defendant] to a defense it does not intend to assert at trial.'" *Potts v. S-Box LLC*, No. 3:09-CV-35, 2010 WL 4683884, at *2 (D. Conn. Nov. 10, 2010) (addressing corporate officer's ambiguous statements about the advice of counsel) (quoting *Nitinol Med. Techs., Inc. v. AGA Med. Corp.*, 135 F. Supp. 2d 212, 215 (D. Mass. 2000)). Lastly, Defendants are not "disclosing favorable communications while asserting the privilege as to less favorable ones." *In re Seagate Technology, LLC*, 497 F.3d 1360, 1372 (Fed. Cir. 2007). Therefore, the Court does not find that Defendants have impliedly waived the attorney-client privilege or work product protection with respect to Hoffmeister's Letter, the citation to Paragraph 34 of the Loveday Affidavit in its Response to Plaintiffs' motion for a preliminary injunction, or its counterclaims and affirmative defenses.

### B. Crime-Fraud Exception

Plaintiffs assert that they have set forth prima facie evidence supporting their inequitable conduct claim, which therefore satisfies the crime-fraud exception to attorney-client privilege. Plaintiffs maintain that the correspondence between the parties establishes that they first "provided Defendants with the contents of [their] then pending patent applications, descriptions, and

21

explanations of the inventions . . . and prototypes that physically embodied the scope of the invention in the patent application." [Doc. 130 at 25]. Then, Plaintiffs allege that the Privilege Log demonstrates that Defendants provided this information to Hoffmeister "prior to his completion of the first draft of the '451 Provisional Application." [*Id.*]. Lastly, Plaintiffs assert that the '451 Provisional Application, the ETS '154 Patent, the ASFM GLK/9 XX PROTOTYPE 7.4, the '633 Patent, the '699 Patent, the '220 Patent, and the '547 Patent "each contain the same, fundamental pivoting angle of (**56**)126º." [*Id.*].

Therefore, Plaintiffs claim that Plate's conception of this angle, "which was incorporated into 'rounds position chamber' featured in claim 1 of the ETS '154 Patent . . . necessitates [his] inclusion as a joint-inventor of the ETS '154 Patent." [*Id.*]. As such, Plaintiffs maintain that Defendants Loveday III and Loveday IV "intentionally misrepresented to the PTO that they were the only inventors of the '451 Provisional Application," and the crime-fraud exception to attorney-client privilege is applicable. [*Id.* at 26].

Defendants respond that they did not commit fraud on the PTO by not identifying Plate as an inventor. First, Defendants claim that Plaintiffs cannot establish fraud or inequitable conduct because ETS and Hoffmeister "did not misrepresent any material information on, or omit any material information from," either the '451 Provisional Application filed on December 22, 2016, to which the '154 Patent claims priority or the '687 Application filed on December 21, 2017, which matured into the '154 Patent. Defendants assert that the '451 Provisional Application "is irrelevant to Plate's claims of inequitable conduct regarding inventorship," as ETS opted to file a "new application claiming priority to the earlier Provisional Application," and "[b]y operation of law, it thereby abandoned the unconverted Provisional Application." [Doc. 133 at 9]. Defendants note that ETS did not provide a declaration of inventorship with the '451 Provisional Application, and

the PTO did not examine it for patentability, thus "the Provisional Application could not have influenced . . . any of the PTO's decision." [*Id.*].

Next, Defendants allege that by the time Hoffmeister had filed the non-provisional '687 Application on December 21, 2017, "the patent application Plate disclosed to ETS had already issued eight months earlier as the '286 Patent (but only after Plate had amended the claims and specifications," and "Mr. Hoffmeister duly identified the '286 patent (and the other Plate patents that had issued) as prior art in the Non-Provisional Application." [*Id.* at 10]. Therefore, Defendants assert that "[b]ecause the '286 patent was prior art, the information in it did not contribute the conception of the invention described in the Non-Provisional Application." [*Id.*].

Lastly, Defendants allege that Plaintiffs have not identified any evidence in support of their claim that ETS and Hoffmeister intended to deceive the USPTO. Defendants note that Hoffmeister "disclosed precisely what Plate alleges Mr. Plate invented, including any angles disclosed in his patents." [*Id.* at 11]. Additionally, Defendants claim that the '154 Patent does not incorporate any limitations as to the specific angles of the rounds positioning chamber, as "nowhere in the claims of the '154 Patent are *any* specific angles recited – much less 126°." [*Id.* at 11]. Defendants maintain that "[a]ll of the claims of the '154 [P]atent require either a 'frontal positioner' . . . or a specifically configured 'positioning chamber' not disclosed or claimed by Plate." [*Id.*].

Plaintiffs reply that Defendants ignore the concept of conception, as under 35 U.S.C. § 116, "[w]hen an invention is made by two or more persons jointly, they shall apply for the patent jointly." [Doc. 139 at 5]. Therefore, Plaintiffs claim that "[b]ecause Plate was a joint inventor, ETS was required to include him on the non-provisional patent application," and thus "[t]he status of Plate's patents as prior art on the filing date—which ETS focuses on—are immaterial." [*Id.*]. Plaintiffs note that Plate provided Defendants with a detailed analysis on September 17, 2016 as

to why his then pending patents differed from Urchek and Fiorucci, which Loveday IV responded

was "promising;" Plate executed the ETS Mutual NDA on October 6, 2016; and Loveday IV

declared that on November 5, 2016, "his first CAD file related to the ETS loader design was

created." [*Id.*].

Under the crime-fraud exception, the attorney-client privilege does not extend to

communications between lawyer and client "in furtherance of future illegal conduct," or that are

"made for the purpose of getting advice for the commission of a fraud or crime." *United States v.

Zolin,* 491 U.S. 554, 556, 562–63 (1989); *see Info-Hold, Inc. v. Trusonic, Inc.*, No. 1:06-CV-543,

2008 WL 2949399, at *6 (S.D. Ohio July 30, 2008) ("Whether a patent holder engaged

in inequitable conduct before the Patent Office, and whether such conduct is sufficient to abrogate

any attorney-client privilege, are questions that concern substantive patent law and, thus, are

governed by Federal Circuit law.")

In *In re Spalding Sports Worldwide, Inc.*, the Federal Circuit ruled that without a prima

facie showing of fraud on the PTO, there was no basis for applying the crime-fraud exception to

attorney-client privilege. 203 F.3d 800, 808 (Fed. Cir. 2000). "A party must establish *Walker

Process* fraud, also known as common law fraud, to successfully pierce the attorney-client

privilege under the crime-fraud exception." *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352,

1358 (Fed. Cir. 2011) (citing *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S.

172, 177 (1965)). In *Unigene*, the Federal Circuit explained that "[a] finding of common law fraud

in the patent context 'must be based on independent and clear evidence of deceptive intent together

with a clear showing of reliance.'" *Unigene*, 655 F.3d at 1358–59 (quoting *In re Spalding*, 203

F.3d at 803). "Such independent and clear evidence must establish a prima facie case of fraud,

which is 'generally held not to exist' unless the accusing party can show: '(1) a representation of

material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.'" *Unigene,* 655 F.3d at 1359 (quoting *In re Spalding* 203 F.3d at 807).

"A finding of inequitable conduct may also prove the crime or fraud exception to the attorney-client privilege." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (internal citations omitted); *but see In re Spalding*, 203 F.3d at 807 ("[I]nequitable conduct is not by itself common law fraud."). "To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO." *Therasense*, 649 F.3d at 1290 (internal citation omitted). Ultimately, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id.* The Federal Circuit explained that the specific intent to deceive must be "the single most reasonable inference able to be drawn from the evidence," and the misrepresentation or omission must have been "but-for" material to patentability. *Id.* at 1290–91. This "tighten[ed] the standards for finding both intent and materiality" to prevail on a defense of inequitable conduct. *Id.* at 1290.[4]

Here, the Court notes that neither party cites to analogous case law where a court analyzed the crime-fraud exception in the context of a dispute over joint ownership. Plaintiffs cite to

---

[4] In *Therasense*, "the Federal Circuit recognized an exception to the need to prove but-for materiality in cases of 'affirmative egregious misconduct.'" *Avnet, Inc. v. Motio, Inc.*, No. 12 C 2100, 2015 WL 5474435, at *5 (N.D. Ill. Sept. 16, 2015) (declining "to apply the affirmative egregious misconduct analysis of *Therasense* to this crime-fraud matter") (quoting *Therasense*, 649 F.3d at 1292). However, the Court will decline to address this issue as it was not raised by the parties.

25

*Therasense* to claim that Defendants "acted with the specific intent to deceive the PTO" on a "central issue [material to patentability] — whether the named inventors were the sole inventors." [Doc. 139 at 6].[5]  However, Plaintiffs incorrectly quoted *Therasense* for the second half of their argument, as the Federal Circuit did not address inventorship in *Therasense*.  In *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, the Federal Circuit affirmed the district court's finding of inequitable conduct, as several specific "falsehoods, misrepresentations and omissions were all directed towards a central issue—whether the named inventors were the sole inventors—and that this issue (inventorship) was material."  225 F.3d 1315, 1322 (Fed. Cir. 2000).

In considering the parties' arguments, the Court heeds the Federal Circuit's admonition that piercing the attorney-client privilege is an "extreme remedy," *Unigene Labs. v. Apotex, Inc.,* 655 F.3d 1352, 1359 (Fed. Cir. 2011), which trial courts should not order without "careful consideration" due to "the fundamental values sought to be preserved by the attorney-client privilege," *Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643–44 (Fed. Cir. 1991).

Plaintiffs do not dispute Defendants' argument that the '286 Patent was prior art to the '687 Application or Defendants' allegations that the claims involved in the '154 Patent either require a frontal positioner or a positioning chamber not disclosed by Plate.  Moreover, the parties dispute the potential incorporation of the alleged 126º in the '154 Patent.  Therefore, the Court's review of the application of the crime-fraud exception revolves around the parties' arguments on the '451 Provisional Application.

"35 U.S.C. § 116(a) provides the standard for joint inventorship:"

When an invention is made by two or more persons jointly, they shall apply for patent jointly and each make the required oath, except as otherwise

---

[5] The Court notes that the Federal Circuit stated in *Therasense* that "[t]o prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO."  649 F.3d at 1290.

provided in this title. Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.

*Dana-Farber Cancer Inst., Inc. v. Ono Pharm. Co.*, 964 F.3d 1365, 1370 (Fed. Cir. 2020). "To be

a joint inventor, one must:"

> (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art.

*Id.* at 1371 (quoting *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998)). "Conception is

the touchstone of the joint inventorship inquiry, *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir.

1994), and conception is complete when an idea is definite and permanent enough that one of skill

in the art could understand the invention, *Burroughs Wellcome* [*Co. v. Barr Labs., Inc.*], 40 F.3d

[1223], 1228 [Fed. Cir. 1994]." *Dana-Farber Cancer Inst.*, 964 F.3d at 1372.

However, the Court finds that Plaintiffs have failed to demonstrate the PTO's justifiable

reliance on Defendant's alleged misrepresentations regarding inventorship. As Defendants state,

ETS opted to file a "new application claiming priority to the earlier ['451] Provisional

Application," and "[b]y operation of law, it thereby abandoned the unconverted Provisional

Application." [Doc. 133 at 9].

"In its Manual of Patent Examining Procedure, the PTO describes a provisional patent

application as a 'quick[ ] and inexpensive[ ]' filing that serves as a placeholder with the PTO and

that grants the applicant 'the benefit of priority' for an invention." *United States v. Camick*, 796

F.3d 1206, 1218 (10th Cir. 2015) (quoting U.S. Patent & Trademark Office, *Manual of Patent*

*Examining Procedure* § 201.04 (9th ed. 2014) [hereinafter MPEP], *available at*

http://www.uspto.gov/web/offices/pac/mpep/mpep–0200.pdf); *see also* 35 U.S.C. § 111(b)

(describing the requirements of a provisional patent application). In *Camick*, the Tenth Circuit

described the process behind a provisional patent application, stating:

> If the applicant takes no action within one year of filing the provisional application, the application will be deemed abandoned and "shall not be subject to revival." 35 U.S.C. § 111(b)(5). The applicant may, however, take additional action during that one-year period to either convert a provisional patent application into a nonprovisional application, 37 C.F.R. § 1.53(c)(3), or to incorporate a provisional application into a subsequently filed nonprovisional application by reference, 35 U.S.C. § 119(e)(1). Therefore, the information contained in a provisional application will only become relevant to a PTO decision if the applicant takes additional action on the application within one year of filing.

796 F.3d at 1218–19. "Notably, a provisional patent application does not require an oath or

declaration by the applicant and 'will not be examined for patentability.'" *Id.* (quoting MPEP §

201.04); *see also Martin v. United States*, 99 Fed. Cl. 627, 632–33 (Fed. Cl. 2011)

("Provisional applications are not examined on their merits.")

Therefore, as the '451 Provisional Application was not examined for patentability, the

Court finds that Plaintiffs cannot establish justifiable reliance by the PTO for the alleged

misrepresentations regarding inventorship. *See Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537

F.3d 1357, 1367 n.7 (Fed. Cir. 2008) ("While we do not hold that inaccurate statements made in

provisional applications cannot evidence an intent to deceive, we note that provisional applications

are not examined and that the alleged misrepresentation here was corrected prior to examination

of the non-provisional applications. As such, we hold that this statement is not clear and

convincing evidence of deceptive intent."). "Unless and until an applicant takes the additional

steps necessary to convert or incorporate the provisional patent application into a nonprovisional

application, any statements contained in the provisional application will not be reviewed by the

PTO. As a result, those statements are incapable of influencing a PTO decision and are therefore

immaterial." *Camick*, 796 F.3d at 1219 (finding false statements made by defendant in provisional

28

patent application could not support convictions for wire fraud or making a false statement to the PTO).

 While Plaintiffs point to the close proximity in time between the parties' communications and the filing of the '451 Provisional Application, and identify specific communications at issue, the Court finds that they cannot establish justifiable reliance on behalf of the PTO regarding the issue of inventorship. Although Plaintiffs claim that they have set forth prima facie evidence of their inequitable conduct claim, and "the Federal Circuit noted in *Therasense* that establishing inequitable conduct 'may also prove the crime or fraud exception to the attorney-client privilege,' the case it cited, *Spalding*, was careful to observe that 'inequitable conduct is not by itself common law fraud,' and that common-law fraud is what is required for piercing the privilege." *Milwaukee Elec. Tool Corp. v. Chervon N. Am. Inc.*, No. 14-CV-1289-JPS, 2017 WL 2312905, at *2 n.4 (E.D. Wis. May 26, 2017) (quoting *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 808 (Fed. Cir. 2000)).

 Further, "as a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Therasense*, 649 F.3d at 1291; *see, e.g.*, *In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, No. 1:10-ML-02181-LJM, 2014 WL 2938183, at *5 (S.D. Ind. June 30, 2014) ("*Therasense* announced new and tougher standards to govern the inequitable conduct defense, which now requires proof by clear and convincing evidence of a specific intent by the patentee to deceive the PTO, and proof of 'but-for' materiality (or reliance by the PTO in allowing a claim) in nearly all circumstances."); *Kenall Mfg. Co. v. H.E. Williams, Inc.*, No. 09-C-1284, 2012 WL 4434370, *5 (N.D. Ill. 2012) (citing *Therasense*, and noting that the Federal Circuit regards the crime-fraud exception as an extreme remedy, and holding that proponent failed to provide "clear evidence of deceptive intent together with a clear

showing of reliance"). The Court finds that Plaintiffs have not set forth clear evidence of deceptive intent, and as previously detailed, Plaintiffs fail to cite to any applicable case law applying the crime-fraud exception based upon a dispute over joint-ownership**.** *See Therasense*, 649 F.3d at 1290–91 ("[T]he specific intent to deceive must be the single most reasonable inference to be drawn from the evidence" and "the evidence must be *sufficient to require* a finding of deceitful intent in the light of all the circumstances. Hence, when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found.") (internal citations and quotation marks omitted).

Additionally, "[b]ecause the evidence on these issues is sharply disputed, the court cannot conclude that the crime-fraud exception applies." *See Milwaukee Elec. Tool Corp. v. Chervon N. Am. Inc.*, No. 14-CV-1289-JPS, 2017 WL 2312905, at *3 (E.D. Wis. May 26, 2017) ("Put simply, while Meyer may have stated his case strongly to the Patent Office, there is insufficient evidence to conclude that he actually misrepresented facts or intended to deceive the patent examiners."); *see, e.g.*, *Berry Plastics Corp. v. Intertape Polymer Corp.*, No. 3:10-CV-76-RLY-WGH, 2014 WL 840952, at *2 (S.D. Ind. Mar. 3, 2014) (finding the although "facts concerning fraud are strongly contested, [s]imply put, the Magistrate finds Intertape's explanations plausible enough to avoid the harsh remedy imposed by the crime-fraud exception"). As such, the Court will not apply the crime-fraud exception to the attorney-client privilege or work product protection.

### C. Work Product Protection

Plaintiffs claim that the work product doctrine does not protect Hoffmeister's analysis of prior art references Urcheck and Fiorucci in August, September, and October of 2016, as litigation had not been considered by either party at this time. Additionally, Plaintiffs state that should privilege under the work product doctrine be deemed to apply, it should be waived in regard to

any work product completed by Hoffmeister that was addressing the same subject matter at issue regarding attorney-client privilege.

Pursuant to Fed. R. Civ. P. 26(b)(3)(B), work product includes materials reflecting "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." "To determine whether a document has been prepared 'in anticipation of litigation,' and is thus protected work product, we ask two questions: (1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (internal citations omitted).

Ultimately, the Court agrees with Plaintiffs that the work product doctrine does not protect Hoffmeister's analysis of prior art references Urchek and Fiorucci in August through October of 2016—to the extent that these documents are not protected by the attorney-client privilege—as any such documents were not prepared in anticipation of litigation.[6] "It is clear that documents prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes, are not covered by the work product privilege." *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). During September and October of 2016, the parties were engaged in discussions about potential business arrangements, and Plaintiffs had not yet sent their cease and desist letter. Similarly, in an analogous patent infringement context, other district courts have found patent prosecution documents to not be protected by the

---

[6] The party asserting work-product protection has the burden of establishing that protection. *See In re Powerhouse Licensing, LLC*, 441 F.3d 467, 473 (6th Cir. 2006). Based upon the Court's review of Defendants' filings, they failed to specifically respond to this argument. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009) (finding district court did not abuse its discretion in finding that document was not protected by the work-product privilege, as "Quickway's response to the Estate's motion to compel, however, was unaccompanied by any form of proof showing that Dailey's statement was created in anticipation of litigation").

31

work product doctrine. *See Info-Hold, Inc. v. Trusonic, Inc.*, No. 1:06-CV-543, 2008 WL 2949399, at *4 (S.D. Ohio July 30, 2008) ("However, other federal courts have concluded that an attorney's thought processes with respect to the preparation of a patent application are too distant in time to be considered as having been made "in anticipation" of litigation.") (collecting cases); *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04-CV-2357, 2006 WL 314435, at *3 (N.D. Ohio Feb. 9, 2006) ("MPT has not presented any evidence that the prosecution documents were prepared with a primary concern to litigation rather than the ongoing patent prosecution. Accordingly, all documents in the prosecution privilege log that are being withheld solely as work product must be produced."). Therefore, the Court finds that the work product doctrine does not protect documents prepared in August through October of 2016, as they were not prepared in anticipation of litigation.

Plaintiffs state in their Motion to Compel [Doc. 130] that they are seeking documents responsive to Request No. 73 to Plaintiffs' Second Request for Production and responsive answers to Interrogatory No. 17. However, Defendants objected to these discovery requests on the basis of attorney client privilege and work product protection. Moreover, the Court notes that no entry on Defendants' Privilege Log is listed as being withheld solely due to work product privilege.

Next, Plaintiffs claim that Defendants have put Hoffmeister's analysis at issue in this case, and that "under Federal Circuit law while the work product of 'trial counsel' is protected despite the assertion of an advice of opinion counsel defense, the same protection does not extend to the work product of the opinion counsel." [Doc. 130 at 24]. Therefore, Plaintiffs also claim that the work product related to Hoffmeister's analysis set forth in the January 27, 2017 response letter is all discoverable. However, as detailed above, the Court finds that Defendants did not voluntarily disclose or waive work product protection. *See In re Columbia/HCA Healthcare Corp. Billing*

*Practices Litig.*, 293 F.3d 289, 306 (6th Cir. 2002) ("[T]here is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege.").

Therefore, the Court only finds that the work product protection doctrine does not apply to the production of documents related to Hoffmeister's analysis of prior art in view of Plate's then pending patents in September and October 2016.

### D. Meet and Confer Requirement

Lastly, the Court has reviewed the parties' arguments regarding Plaintiffs' alleged failure to comply with the meet-and-confer requirements before this Court. Fed. R. Civ. P. 37(a)(1) requires that motions to compel "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." The good-faith certification pursuant to Rule 37(a)(1) is not an "empty formality," and parties are required to engage in meaningful attempts to resolve discovery disputes prior to filing such motions. *Brady v. LTD Parts, Inc.*, No. 2:08-0058, 2009 WL 2224172, at *1 (M.D. Tenn. July 22, 2009) (quoting *Ross v. Citifinancial, Inc.*, 203 F.R.D. 239, 240 (S.D. Miss. 2001)).

While the parties disagree about Plaintiffs' failure to confer about several of the topics resulting in the motion to compel, the Court finds that the overwhelming substance of the disputes at issue were discussed by the parties in an effort to obtain the discovery without the involvement of the Court. Additionally, Defendants do not maintain that Plaintiffs failed to confer regarding the work product privilege and the documents they claim were not prepared in anticipation of litigation.

33

**V.      CONCLUSION**

Accordingly, for the reasons explained above, Plaintiffs' Motion to Compel Responses to Plaintiffs' Discovery and Orders Regarding Waiver [**Doc. 130**] is **GRANTED IN PART and DENIED IN PART.**   Defendants are **DIRECTED** to produce any documents solely withheld under the work product doctrine related to Hoffmeister's analysis of prior art in view of Plate's then pending patents in September and October 2016.

**IT IS SO ORDERED.**

ENTER:

_United States Magistrate Judge_